MAY 20, 1803.

The Same *against* The Same—Upon the Same.

The point to be decided, on this application, is highly important as a precedent, viz: Had the entry on which the survey was made become void? To ascertain this point, recourse must be had to all the acts of assembly which have an immediate relation to it. In

the act of 1779, "for establishing a land office," &c. (Sec. 3), are the following clauses: "Every surveyor shall, at the time of making entries for persons not being inhabitants of his county, appoint a time for surveying their land, and give notice thereof in writing to the person making the same." "Every chief surveyor shall proceed with all practicable dispatch, to survey all lands entered for in his office, and shall, if the party live within his county, either give personal notice of the time at which he will attend to make such survey, or shall publish such notice by fixing an advertisement thereof on the door of the court-house of the county, on two several court days, which time so appointed shall be at least one month after personal notice given, or after the second advertisement so published; and if the surveyor shall accordingly attend, and the party, or some one for him shall fail to appear at the time with proper chain carriers, and a person to mark the lines if necessary, his entry shall become void, and the land thereafter subject to the entry of any other person, and the surveyor shall return him the warrant, which may, notwithstanding, be located anew upon any waste or unappropriated lands, or again upon the same lands, where it hath not, in the mean time, been entered for by some other person. On these clauses it is only necessary to observe, that for several years after opening a land office by the State of Virginia, they specify the only cases (except a withdrawal by the owner) in which an entry could have become void; and it is believed, that, from their passage until this day, there has not been a single instance of any such notices as were authorized by these clauses, having been given in Kentucky. But an act which passed in 1784, "concerning entries and surveys," &c., further provided, "that all entries made in the county surveyor's books on the western waters, other than the entries made by virtue of officers' and soldiers' claims for military services, before the passing of this act, shall be surveyed, and the surveys thereof returned as the law directs, on or before the first day of February, 1786; and that all future entries on the said waters shall be in like manner surveyed and returned within one year after the date of every such entry. If any entry shall not be surveyed and returned within the terms aforesaid, it shall be lawful for any person to enter for and locate the said lands, in like manner as if such prior entry had not been made." On this act the reflection unavoidably arises, that as to the owners of those entries which had been made previous to its passage, it was rigorous and unjust

in the extreme, and was a wide departure from that liberality and justice for which the legislature of Virginia has ever been celebrated. In this act no exception was made in favor of infants, feme coverts, captives, nor those who were insane, or in foreign countries. Only about twelve months were allowed; during which, multitudes of other owners of entries must have remained ignorant of the limitation, and within which it was impossible for the surveyors, with the assistance of all the deputies they could have engaged, to have accomplished the business; not to say, that in this country the danger from the Indians alone rendered it impossible. These considerations, it may be presumed, induced a repeal of this act in 1785, which left all entries for land, as if it had never existed; and in lieu thereof it was then enacted, " That immediately after the first day of January, 1787, the principal surveyor of every county on the western waters shall, and he is hereby required to give notice to all persons claiming land by entry within his county, or to their agents, attorneys, or other persons acting in their behalf, either personally, or by affixing the same at the court-house door, or other usual place of holding the courts of the said county, on two several court days, that he will proceed by himself, or one of his deputies, to survey the lands therein mentioned, on a certain day which he shall appoint, which day so appointed shall be one month, at the least, after the notice given, on the last time of advertising the same; and if any person, or his agent or attorney, as aforesaid, shall fail or neglect to attend the surveyor, with chain carriers, and a person to mark the lines as required by law, on the day appointed for that purpose, such entry shall become void, and the land liable to be again entered for by any person holding a land warrant; and the surveyor shall return the warrant on which such entry was made, to the person owning the same, or his agent, which may, nevertheless be located on any waste or unappropriated lands, or on the same lands, if not already taken by some other warrant. And the owners of entries already made, shall, on or before the said first day of January, appoint some person within the county where the lands lie, as their agent or attorney, who shall give notice of such appointment to the surveyor, within one month thereafter, or on failure thereof, his entry shall become void. Provided, that nothing in this or any other act, shall extend to forfeit or make void any entry claimed by infants, or prisoners in captivity, but that all such persons shall have three years, after their several disabilities are removed, to

complete the same," &c. By a clause of this act, the owners of *all entries*, which had been made prior to its passage, were required to appoint agents or attorneys within the counties where the lands lay. But the words, *all entries*, do certainly exceed the intentions of the legislature; for it would be unnecessary and absurd to compel the owner of an entry to appoint an agent or attorney in the county where he resided himself. Indeed, the whole of this clause is redundant and partial. The act would have fully accomplished the intentions of the legislature, by declaring that all entries should become void, if the owners themselves, or attorneys, failed to attend the surveyor when notified to do so, by advertisement. The legislature of Virginia were not, however, restrained by their constitution from passing this act; and, therefore, however partial and unjust it may be in some of its parts, it must have its operation. By three acts of Virginia, one of 1786, another of 1788, and another of 1790; and by two acts of Kentucky, one of 1792, and the other of 1793, the time for appointing agents or attorneys, and giving notice thereof to the surveyors, as required by the act of 1785, was prolonged unto the first day of January, 1796, and concerning the last five acts alluded to, it ought to be noted, that they are only amendatory of the act of 1785, and only respect entries which had been made prior to its passage; and there is no other act requiring the owners of subsequent entries to appoint agents or attorneys. December 15, 1795, an act passed, "giving further time to make surveys," &c., which is in these words, "Be it enacted by the general assembly, that there be allowed until the last day of November, 1797, to the owners of entries to survey the same." And November 29, 1797, an act passed, giving further time to the owners of lands to survey the same," &c., which is in these words, "Be it enacted by the general assembly, that the further time of ten months, from the last day of November, 1797, be allowed the owners of entries to survey the same in any part of this state." And after allowing longer definite periods to survey certain entries which were peculiarly situated, it provides, "that nothing in this act, or any other act, shall extend to forfeit or make void any entry claimed by infants, *feme coverts*, persons *non compos mentis*, or prisoners in captivity," &c. These two acts, from the passage of the first, to the last day of September, 1798, certainly suspended the operation of all acts, or clauses of acts, by which any entry might otherwise have become void before the last day of September, 1798. But after that day the act of 1785 became fatal to all

those entries which had been made prior to, and whose owners did not reside in the county where the lands lay, at the time of the passage of the last-mentioned act, and who before the first day of January, 1796, had not appointed agents or attorneys therein, or come to reside there themselves, and given notice thereof to the surveyor, those cases excepted only, which were saved for longer periods by the act of 1797. As to all entries, whose owners resided in the counties where the lands lay when the act of 1785 was passed, or came to reside within the boundaries of those counties, before the last day of September, 1798, and have continued to do so, their entries have not, and can not become void, otherwise than by failing to attend the surveyors, as required by the acts of 1779 and 1785. It has, nevertheless, been generally believed that the time for surveying entries expired on the last day of September, 1798, in all cases not otherwise specially provided by the act of 1797. And true it is, that, from the style of this act, it might reasonably be expected that by some preceding act, the time for surveying entries had been limited, and it is probable that the legislature which passed this act and that of 1795, entertained such an opinion. How the opinion arose, it is hard to say: Perhaps it was from the incongruous titles of the acts of 1788, 1790, 1792, and 1793, before alluded to. Be this as it might, certain it is, that there was no such act; and it would be a subversion of the established rules for the construction of statutes, to found a penalty or forfeiture on an implication; and it must be peculiarly absurd to make an act penal by implication, which was evidently intended to be remedial. But had these acts contained direct and positive restrictions as to the time of surveying entries, beyond what was contained in the land law of Virginia, then the restrictions themselves would have been void, under that article of the compact which provides, that all private rights and interests of lands within Kentucky, derived from the laws of Virginia prior to the separation, shall remain valid and secure under the laws of this state, and be determined by the laws existing in Virginia at the time the separation took place. It is to be lamented that the clause of the act of 1785, respecting the owners of entries then existing, and who did not reside in the county where their lands were situated, has annulled a great number of those entries; whilst the entries then made, whose owners have resided in the county where their lands are situated, still remain valid. And it is further to be lamented, that, before the last of September, 1798, this gross par-

tiality which was then to have its effect, was not discovered and prevented. As the grievance now stands, it is equally beyond the power of the legislature or the judiciary to afford relief. As to the plat and certificate of survey now in question; it appears that the entry on which it is founded, was made subsequent to the act of 1785, and that the owner was an inhabitant of the county where the land lies, at the time it was made, and continued to be so until the year 1800. So that from the considerations which have been stated, his entry could only have become void, on his failing to attend the surveyor of the county, as required by the act of 1785. And as the surveyor of the county has executed a survey on the entry, it ought to be presumed that the entry was not void, until the contrary shall be positively proven; which can not otherwise be done with propriety, than in a suit by an adverse claimant.

Wherefore, it is adjudged and ordered, that a peremptory mandamus be issued and served on the said Edmund Thomas, register of the land office, requiring him to receive and register the said plat and certificate of survey, and in due time to make out a grant conformably thereto for the land.