Freeman, J.,
delivered tbe opinion of the court:
Defendant stands convicted of tbe murder of Tbos. J. Coverbill, at Rutherford station, Gibson county, on the 13th of May, 1874. He was jointly indicted with Mrs. Jennie Coverhill, the wife of deceased. She was permitted by tbe state to testify in tbe case, and consequently escapes tbe penalty of her crime, in so far as she may have participated in the murder. She, however, is the main witness in the case on the part of the state, and the only one who saw the fonl deed.
While it would appear from her testimony that she *805 took no active part in the killing, it is evident sire was party to the conspiracy to take Iris life, defendant and one kfrs. Gallagher, from her statement doing the bloody work.
She then stands before rrs as an accomplice in the transaction, and her testimony is to- be taken subject to the rules of law affecting a witness thus situated. Mrs. Gallagher, the other participant in the killing, was sworn and sent before the grand jury, giving testimony there on which it was found. She escapes, we take it, in this way, and is now probably out of the jurisdiction of the court. She does not appear, at any rate, as a witness on this trial.
The jury found defendant guilty of murder in the first degree, but found mitigating circumstances, whereupon the circuit judge regarded this finding and commuted the punishment to imprisonment for life in the penitentiary, from which judgment, after motions for new trial and in arrest of judgment, an appeal has been prosecuted to this court.
The case has been presented for the defendant with most creditable ability by his attorney, numerous grounds of error being assigned on which a reversal of the judgment is asked at the hands of this co-urt,
We proceed to notice these questions so far as deemed necessary for the determination of the case.
The main witness in the case being the wife, and she being an accomplice, it became the duty of the court to give the jury proper instructions to guide them, as to the weight and effect of such testimony. He told them that the law is, that in order to give force and credit to the testimony of an accomplice, it should be taken with a great deal of caution, and should be scrutinized with great care, and that it should be corroborated and sustained by other evidence and circumstances, so as to satisfy the minds of the jury that the witness spoke the truth; when this is done, the jury, if they are satisfied'beyond any reasonable *806 doubt that the witness spoke the truth, although an accomplice in the crime, you may receive and give full credit to her testimony.”
This statement of the rule, as far as it goes, though in-artificially worded, is not of itself subject to criticism. It is substantially the general rule as given by the books on this subject. See Greenl. on Evid., vol. 1st, sec. 381.
But the rule is stated in connection with another, as to the extent and character of corroboration demanded in such cases. Some of the authorities hold it sufficient if the witness is confirmed in any material part of the case. Greenl., sec. 381. But in this state we have adopted the rule that it is not sufficient to corroborate an accomplice as to the facts of the case generally,'but that he must be corroborated as to some material facts which go- to prove that the prisoner was connected with the crime charged. An illustration of the rule is given in Russell on Cr., vol. 2d, p. 952, where “upon an indictment for breaking into a warehouse and stealing a quantity of cheese, an accomplice proved that the thieves took a ladder from certain premises, and it was proven by a witness that the ladder was so taken away, and it was proposed to call other witnesses to confirm the accomplice, as to the mode in which the felony was committed — that is, by the use of a ladder — the court said ‘you must show something that goes to bring home the matter to the prisoner. Proving by other witnesses that the robbery was committed in the way described by the accomplice, is not such confirmation as will entitle his evidence to credit, so as to affect other persons.’ Indeed, says the learned judge, I think it is really no confirmation at all, as every one will give credit to a man wlm avows himself a principal felon, for at least knowing how the felony was committed. In a word, the confirmation or circumstances and facts to sustain the credit of the witness should be such independent facts as of themselves tend to *807 connect the prisoner with the charge, or the deed for which he is being tried.”
We would be compelled probably to reverse this case for failure to thus explain the rule to the jury. But when taken in connection with the fact that the very principle in substance, which we have laid down, was asked to> be charged and refused by His Honor, we have no 'alternative but to say this refusal is fatal error.
Another fatal error is found in the record in this case. One Adair was of the jury who tried the prisoner. He seems to have qualified himself on his examination by the court as free from bias, and not having formed or expressed an opinion as to guilt or innocence of the prisoner. It is clearly shown by most satisfactory testimony that he had expressed an opinion, and said that if he should be on the jury he should go for hanging; the prisoner, or be for hanging him. It is further shown by parties not impeached that he was conscious of his fault in not disclosing the fact on his examination, and attempted to explain it, adding that he was for being as light on the prisoner as he could. This is a very lame excuse, but serves to confirm the fact alleged that he had so expressed himself, as it was the natural resort of probably a weak man, in extenuation of his conduct in getting on a jury where he had expressed an opinion strongly against the prisoner, to show that he had not done what he had said he would do. That such’ a juror was incompetent, and a new trial should have been granted, we have so often held that we need not again go into a discussion of the question. See Riddle v. The State, 3 Heis., 407; Fitzgerald v. The State, MS., April, 1871; [Brakefield v. State], 1 Sneed, 219. We need not discuss the question as to whether the affidavit of the offending juror is proper to be received to explain his conduct, or exculpate himself.
It has been laid down by this court in the case cited in 1 Sneed, that it cannot be admitted, and if admitted, would *808 be of little weight. It is sufficient, for tbe decision of this case to say. that there is nothing in this case, either in the statement of the juror or that of the witnesses introduced, when taken together, that exculpates the juror or relieves him from the charge of having formed and expressed an opinion against the prisoner. Jie was not an impartial juror.
As the case must go back for a new trial, it is proper that we pass upon the question of the admissibility of certain alleged confessions shown to have been made to the prisoner while under arrest, and before his trial by the. committing court. It seems the deceased had about him, perhaps, a pocket book containing $400. This had been taken to a field, concealed under a log, and a peculiar crooked stick placed over the log to mark the place. Mrs. Ooverhill had been arrested at the same time with the prisoner, it being on Monday after the killing on Tuesday night before. Soon after her arrest, perhaps, she had confessed her knowledge of the crime. Both were under guard. One of the jiarties having charge of the prisoner during the night went to him, and asked him if he knew where the pocket book was. At first he said he did not, when the witness replied: “I know you do know. You had just as well tell me. Mrs. Ooverhill has told all.” He then told prisoner that Mrs. Ooverhill said he had told her that it was under a log back of Hyde’s field.
He then said to witness, “If she told him that, it was as near as be could tell, and if they could not find it to. wait until day and be would go and help find it, or. show him where it was.” This he afterwards did. It is objected that this confession is within the rule of confessions under duress, or obtained by promises or threats or inducements held out to a prisoner, and such as the policy of the law excludes from being used against him.
In support of the position of counsel is cited an illustration of what had been deemed sufficient in a case in Eng *809 land, given in 1 Greenl. on Evidence, 220, to exclude sucli confession, where a constable who arrested a prisoner said: “It is no use for you to deny it, for there are the man and the boy who will swear they saw you do it,” together with other like cases, Mr. Greenleaf, however, gives the principle on which the rule rests in the language of Chief Baron Eyre, as follows: “A. free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and is therefore admitted as proof of the crime to which it refers; but a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape, when it. is to be as the evidence of guilt, that no credit ought to be given to it, and is therefore rejected.” [See 1 Greenl. on Ev., sec. 219.1 This rule is sound both as a matter of humanity as well as of true legal philosophy; but 'as Mr. Greenleaf says: “It cannot be denied that this rule has been sometimes extended quite too far, and been applied to cases where there could be no reason to suppose that the inducement had any influence upon the mind of the prisoner.” [See 1 Greenl. on Ev., sec. 219.]
In reference to the illustration cited by counsel, he says it is difficult to reconcile these and similar instances with the spirit of the rule. If the party has made his own conclusions of the advantages to be derived from confessing, and has thereupon confessed the crime, there is no' reason to say it is not voluntary.” The principle on which the rule rests is clearly stated by this court in Deathridge’s case [Deathridge v. State, 1 Sneed, 76], cited in the case of Maples v. The State, 3 Heis., 412. If a confession be free and voluntary, if it appear to proceed from a sense- of guilt, and not from the influence of hope or fear in any degree, it is competent evidence. G-reat weight is due to a confession of this kind, for we are to presume, in the absence of influence or motive, a person who is innocent will not confess himself guilty. But if the confession be the *810 result of liope or fear, induced or excited by a person baying power over the prisoner, it becomes incompetent; for in such case it can have no tendency to prove the prisoner is guilty of the crime.'’
Testing the question by these principles, we think the confession was clearly competent. Being told simply that another had told all about a matter, and that he had just as well tell for that reason, would not tend to excite hope or fear, but would only give the party knowledge of the facts, which, if true, Avould naturally prompt an innocent man at once to deny the statement made if untrue, rather than admit a falsehood which might imperil his life. "We can see nothing in a statement made under such circumstances tending to weaken its force as an admission of the truth of the case, and, therefore, hold there was no error in allowing the statement thus proven to go to the jury.
Thera are several other errors assigned in argument based on failure or refusal to instruct the jury as to certain propositions presented by counsel for defendant. Some of them were proper to be given, others might require qualification, though correct as far as they go. We need not discuss them, as such errors are not likely to occur on another trial.
Only one other matter need be referred to, that is a motion for a change of venue. We do not deem it necessary to decide the questions made on this matter, as they are not now of any practical importance, the case being reversed for other reasons herein given.
We forbear to discuss the facts of this case, as the whole case must be reinvestigated by a jury, Avho should be, as they will, entirely untrammeled by anything that has occurred in the case, and free to decide the case on the facts as they may then appear to them by the testimony, and render such verdict as the facts, as then presented, and the law shall demand.
lleverse the case, and remand for a new trial.