# P. McGoldrick *v.* The State.

## (*Knoxville.* September Term, 1929.)

Opinion filed November 16, 1929.

G. W. Montgomery and Wm. I. Davis, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General, for the State.

Mr. Justice Cook delivered the opinion of the Court.

Plaintiff in error was convicted of involuntary manslaughter for causing the death of Hattie Atkinson Potter by striking her with an automobile on the highway near the entrance of the Lincoln Memorial University campus. He appealed and insists that the conviction should be reversed (1) because the evidence preponderates against the verdict and in favor of his innocence; (2) for prejudicial error in the court's charge, and (3) because of the disqualification *propter affectum* of Arch Bartlett, a juror whose bias in favor of the prosecution was unknown to defendant until after the verdict.

The attack upon the qualification of the juror is made through the testimony of witnesses McNeely and Venable. These witnesses in substance say that they talked with Bartlett before the trial and he told them that his daughter was very friendly with Miss Atkinson, who afterwards married Potter, that she spent week ends at his home, and his daughter thought a lot of her. McNeely could not remember what Bartlett said about the accident except that he spoke of the distance the car skidded and that he judges from the conversation that Bartlett had some feeling against McGoldrick, and that in response to McNeely's remark that McGoldrick was a good boy and it was hoped he was not boozing that Bartlett replied he probably was boozing. McNeely says Bartlett did not state what the proof was and expressed no opinion as to who was at fault. Venable said Bartlett referred to McGoldrick's case as a bad case and to Venable's remark that it was an accident replied that the proof would show it to be a bad case.

Bartlett admits acquaintance with the young woman who was killed and her visits to his home while his daughter was at Lincoln Memorial University, but says

he knew nothing of the facts except from rumor and what his daughter told him, and that she was not a witness to any of the facts.

The defendant was entitled to a fair and impartial trial, which of course includes the selection of a fair and impartial jury to pass upon the facts. Where the jury or a juror has prejudged the case and the knowledge of his bias or prejudice is unknown until after the verdict, the courts say it must be presumed that his prejudices enter into and become a part of the result and for that reason the verdict should be set aside. *Brakefield* v. *State*, 1 Sneed, 219.

Conversations and statements of jurors and opinions of guilt founded upon rumor or upon newspaper reports do not render such jurors incompetent and their participation in a verdict will not vitiate it. *Troxdale* v. *State*, 9 Humph., 422; *Palmer* v. *State*, 121 Tenn., 465.

Mere loose impressions and conversations of a juror founded upon rumor cannot be regarded as the formation or expression of an opinion or a conviction. There must be something to justify a conclusion that the juror is hostile to the accused and maliciously finds a place on the jury with a view to injure him.

It is not shown that Bartlett expressed an opinion. While it may be inferred from the statements of Venable and McNeely that he had an opinion, their testimony does not disclose that he was in possession of the facts other than through rumor. It may also be inferred that as a result of what he had heard and because of his acquaintance with the young woman, he sympathized with the prosecution, but it does not appear from this record that his feeling was such as to create a bias that

would overcome his sworn duty as a juror to render verdict upon the law and facts.

Bartlett denies the existence of a disqualifying opinion or of bias and his denial created an issue for the determination of the trial judge. A clear case is required to justify the annulment of a verdict based on the incompetency of a juror raised for the first time after the verdict. The bias of the juror does not sufficiently appear from the evidence to justify annulment of the verdict.

 The indictment contained two counts, one charging a felonious killing through culpable negligence and the other a killing that resulted from the action of the accused in driving his automobile on the highway while drunk. There was no direct evidence of negligent operation of the car other than the act of exceeding the speed limit. All the direct evidence related to the charge of unlawfully driving at a speed of more than thirty miles an hour and to the charge embraced in the second count of driving while drunk.

Through the second assignment of error it is insisted that the trial judge committed an error in charging, after stating the law applicable to the speed limit, that if the accused was running the car at a lower rate of speed than thirty miles an hour but was running it in a reckless and careless manner and caused the death, he would be guilty of involuntary manslaughter.

Referring to *Copeland* v. *State*, 154 Tenn., 7, it is insisted for the defense that this was error because it would make the defendant guilty of negligent operation independent of whether the negligence was or was not the cause of the accident. There was no request for additional instruction that if defendant was neither drunk

nor exceeding the speed limit and was not acting in reckless disregard of the life of persons on the highway, he would not be guilty, or if he was exercising due caution and death was the result of an intervening cause in which he did not participate and which he could not foresee, he would not be guilty.

It is apparent from the record that the issue of culpable negligence, unattended by the act of exceeding the speed limit or the act of drunkenness, was not a subject of controversy in the trial court. We say this because that question was not emphasized by the proof on the part of either side. The issues presented by the evidence relate altogether to whether death resulted from the defendant's act of unlawfully driving more than thirty miles an hour or unlawfully driving while drunk. In either event, contributory negligence or other intervening cause could not be introduced to excuse the homicide.

One who disobeys the statutory rule regulating speed defies the law and is held to have anticipated the possibility of any injury caused by such recklessness. *Lauterback* v. *State,* 132 Tenn., 606. Driving while drunk is an act *malum in se,* highly criminal, fraught with danger and when death results as a consequence, the contributory negligence or the unexpected conduct of the person killed cannot be introduced as an excuse for the killing. *Keller* v. *State,* 155 Tenn., 637.

We have carefully reviewed the evidence and find it sufficient to sustain both charges, that of driving at more than thirty miles an hour and driving while drunk.

The young woman was struck near the entrance of the University campus where people frequent the highway. Professor Earl H. Smith, who was on the porch of a

building on the campus and about seventy-five yards distant, says he heard screaking of brakes, skidding of wheels, and the roar of an engine, looked and saw McGoldrick's car pick up Miss Atkinson on the opposite side of the driveway and carry her about thirty feet when she fell as the car slowed up just before striking a Pontiac car that was parked beside the road. Marks on the highway showed that McGoldrick's car skidded altogether fifty steps, and when it ran into collision with the Pontiac car shoved it forward ten or twelve feet. The collision stopped him. The first skid marks appear to be twenty steps or about sixty feet from where the car first struck the young lady, according to Sam Steel, who measured the distances.

We find no reversible error. Affirmed.