## HORATIO N. SIMMONS *vs.* NEW BEDFORD, VINEYARD & NANTUCKET STEAMBOAT COMPANY.

The owners of a steamboat managed and navigated by their servants for the carriage of passengers for hire, on the side of which hangs a small boat suspended over a part of a deck where it is proper for passengers to be, are bound to use the utmost care consistent with the nature and extent of their business, to keep this boat so secured as to guard against injury by its falling upon any passenger from any cause, including careless or irregular acts of other passengers, which may reasonably be anticipated.

On the trial of an action by a passenger for an injury sustained by the fall upon him of a small boat suspended over the main deck of a steamboat, the question whether he was in the exercise of due care in taking his position in a place assigned for the use of passengers, under the small boat, at a time when he saw two persons in it, and in continuing to stand there, without attempting to move away, while he saw two or three other

persons enter it, is a question for the jury; and no exception lies to the refusal of the presiding judge to rule thereon as matter of law.

On the trial of an action by a passenger for an injury sustained by the fall upon him of a small boat, which was suspended over the main deck on the larboard side of the defendants' steamboat, and fell at a time when four or five persons were in it and another person was trying to get into it, *Held,* that the opinion of a witness whether it was not manifestly to the discernment of passengers of common understanding an inappropriate place for passengers to be in, was inadmissible in evidence;

*Held also,* that evidence that passengers had been in the habit of sitting in it so frequently before the accident that the officers of the steamboat must have known of such habit, was admissible, but did not show that the officers had any reason to suppose that such occupation would be dangerous;

*Held further,* that evidence of disregard by passengers of the rules of the steamboat as to the rails in other parts thereof, and to the hurricane deck, and to a similar small boat which was more firmly supported upon the starboard side, had no tendency to show a use of the larboard small boat by the permission or with the knowledge of the officers, or in a manner dangerous to passengers; and that, if such evidence was received, the defendants had a right, upon their request, to instructions to the jury to that effect.

TORT for injuries sustained by the plaintiff while a passenger on board the defendants' steamboat.

At the trial in the superior court, before *Putnam,* J., the material facts appeared as follows: The plaintiff paid for his ticket and took passage on the defendants' steamboat, August 12, 1865, for a trip from New Bedford to Martha's Vineyard to attend a Methodist camp-meeting. The steamboat, which was managed and navigated by the defendants' servants, was crowded, the whole number of passengers being estimated variously from one thousand to two thousand. Shortly after it left New Bedford, the plaintiff took his position on the main deck, at a place where, it was not denied, it was proper for passengers to be, and over which was hung, on davits, the larboard small boat, about fifteen feet long, weighing two hundred and twenty-five pounds, suspended by tackle and falls, which were made fast at each end of this boat by a hook to a ring attached to a bolt about three quarters of an inch in diameter driven into the woodwork. This boat was hung on this part of the steamboat for convenience of lowering in case a passenger should fall overboard, and was so placed by direction of the United States steamboat inspector, whose testimony, confirmed by that of an experienced steamboat captain, tended to show that the bolts were strong enough to sustain the weight of the boat and the

weight of ten or twelve persons besides; and there was evidence in behalf of the defendants that the bolts were of suitable composite metal incapable of rusting, and that the stern bolt was without flaw or blemish; but two of the plaintiff's witnesses testified that the metal of this bolt was corroded, one of them saying that he thought it was iron and rusted. The plaintiff testified that when he moved to his position, above mentioned, he saw two persons in the small boat, and that afterwards, while he was standing under it, he saw two or three other persons enter it. About fifteen minutes after the voyage began, the stern bolt broke, and the boat fell, as another person was getting into it; and in falling it struck the plaintiff on the head and injured him seriously. There was testimony tending to show that before it fell it had been swung and rocked by the persons in it; and one witness testified that he moved from under it for that reason, and saw several other persons also moving from under it.

The defendants asked the judge to rule that the plaintiff, knowing that the boat was hanging over his head and that persons were in it, must be held to have known also that there was danger in his position, and was guilty of negligence in omitting to remove or attempt to remove himself from the peril; but the judge declined so to rule, and submitted the question whether the plaintiff was in the exercise of due care, to the jury, under instructions to which no exception was taken.

It was conceded that the small boat was not "primarily intended for passengers to sit in or get into;" and it appeared that the manner in which they got into it was by taking hold of the davits and stepping up from the platform of the wheelhouse, from which to the small boat's gunwale the distance was three feet and a half. The defendants proposed to ask a witness whether in his judgment the small boat was not manifestly to the discernment of passengers of common understanding an inappropriate place for passengers to be in; but, on the plaintiff's objection, the judge excluded this question, but permitted evidence of the situation of the small boat and the difficulties of getting into or out of it.

It appeared that another boat, somewhat larger in size, was hung on the starboard side of the steamboat, substantially corresponding in position with the boat which fell, except that its place was further towards the stern of the steamboat, and that it was lashed to the railing of the promenade deck and held up by " bearers " (so called) ; and it appeared by the testimony of the captain that it was one of the rules of the steamboat that passengers should not " ride " in either of the small boats or outside the rails or on the hurricane deck, and that the officers were directed to enforce this rule. " The plaintiff offered evidence to show that it was not enforced, and that passengers, before the day of the accident, had been allowed to ride on the hurricane deck, outside the rails, and in the starboard boat, with the knowledge and permission of the officers; and also stated he proposed to offer evidence of a habit of passengers, before the accident, to ride in the larboard boat. This was objected to by the defendants, but the judge admitted the evidence ; and the plaintiff then called witnesses, some of whom testified that they had seen passengers riding in this larboard boat frequently, as well as in the starboard boat, during that summer ; and one of the officers testified that he himself permitted, on one occasion, some ladies to remain sitting in the starboard boat after he saw them there. The officers denied, however, ever having known of passengers riding in the larboard boat, except that the first mate testified that he had seen passengers in the larboard boat once or twice, but could not say whether before or after the accident, and that he ordered them out. The judge instructed the jury that they were to consider this evidence and say whether it satisfied them of a habit of passengers to ride in the larboard boat, so constant, repeated and well known as that the jury might fairly believe that the officers must have known it; and also instructed the jury, at the request of the plaintiff, to disregard any testimony as to what was seen by witnesses after the accident." The defendants afterwards asked the judge to strike out all the testimony concerning the presence of passengers in the starboard boat, or outside the rails, or on the hurricane deck; or, if he should not strike it out, to instruct the jury that the fact that passengers

had disregarded the rules of the steamboat in respect to the starboard boat, the rails, or the hurricane deck, had no tendency to show either license, permission or custom affecting the larboard boat, or that there was danger of its being abusively or otherwise irregularly used by passengers; but the judge declined to comply with this request.

The defendants also submitted to the judge a prayer to instruct the jury, among other things, " that the larboard boat was plainly an improper place for passengers to enter into, and that, if they did so enter without the defendants' knowledge or permission, it was misconduct on their part, for which, and for its consequences, the defendants were not liable; that the defendants were not bound to foresee and provide against abuse of it, but to make it perfectly fit, so far as possible, for its appropriate uses; that, admitting that there was nothing in the manner or place in which it was hung to indicate that it was not a place for passengers, and admitting that it was the custom for passengers to sit in it, yet if it was broken down by being filled beyond its reasonable capacity, or by the improper conduct of persons in it, and before the officers knew or could reasonably be supposed to know thereof, and there was room for the passengers in proper places elsewhere, the defendants were not liable; that if it was hung as it should have been, and in conformity with the law, and with sufficient security for the purpose for which it was placed there, as matter of law the defendants were not guilty of negligence in not posting up a prohibition against passengers' climbing into it; and that if the persons who broke it down were improperly in it, or if it was broken down by the improper conduct of the persons in it while they were there, the defendants were not liable."

The judge declined to give the instructions above quoted, but instructed the jury " that as passenger-carriers the defendants were bound to use the utmost care and diligence in conveying the plaintiff in safety, and to do all that human foresight and sagacity could reasonably do to protect him from injury, and if by the exercise of such care and judgment this accident could have been guarded against, it was their duty to have done it;

that the jury might say on the evidence, whether the boat was so situated that passengers, in the ordinary course of things would be likely to enter it, and that the officers must have so known, or whether there was a habit on the part of passengers in entering it, so constant, repeated and well known as that the jury might fairly believe that the officers must have known it; and that if they so found, and further found that the safety of passengers who were below, and in a proper place, and exercising proper care of themselves, was imperilled by passengers thus getting into the boat, or being likely to get into it, the defendants should have prevented their getting into it, if the exercise of the requisite care and judgment could have prevented it, or if that could not have been done, they should have done all in their power so effectually to have secured the fastenings of the boat, as to have prevented its falling should passengers enter it, or if that could not be done, by giving proper warning to passengers below." And the judge further instructed the jury " that in considering the question as to whether the defendants exercised the requisite care and judgment, they might consider the fact that the small boat was hung in that vicinity by order of the government inspector, and the purpose for which it was hung, and say whether or not, consistently with such order and such purpose, it could not at the same time have been so hung and protected as not to have imperilled the safety of passengers, if in their judgment it did so imperil it." And then, at the request of the plaintiff's counsel, the judge added the following instructions:

" 1. The defendants were bound to use reasonable prudence so to arrange the different parts of their steamboat, its equipments and the articles on board used by them in navigating it, that they should not endanger passengers by getting out of place in consequence of acts of carelessness on the part of other passengers, which in the ordinary course of things the defendants had reason to expect would happen, and against which reasonable prudence on their part would have provided.

" 2. If the place where the plaintiff was standing at the time of the accident, was used by and appropriated to the occupation

of passengers, and the plaintiff was in all respects using due care, and such place was in fact insecure by reason of danger from the falling of the boat from above by passengers getting into it, and the defendants were negligent either in assigning such place for passengers to stand below, or in not warning them of danger, or in not sufficiently securing the fastenings of the boat, or in not preventing the entrance of passengers into it by suitable means, such as giving notice not to enter it, or placing it differently, or more effectually railing off the access to it, they having reason to believe that such entrance was likely to take place, and so to endanger passengers below, and the injury to the plaintiff happened in consequence of such negligence, the plaintiff might recover.

" 3. The fact that the defendants complied with the requisition of the government inspector as to the means provided for rendering assistance to passengers overboard, did not excuse them from such precautions as were needful for the safety of those on board."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*J. C. Stone* (*W. W. Crapo* with him), for the defendants.

*G. F. Hoar & P. E. Aldrich*, for the plaintiff.

GRAY, J.[*] This is an action of tort to recover damages for injuries sustained by the plaintiff while a passenger on a steamboat belonging to the defendants and managed and navigated by their servants, from the falling upon his head of a small boat hung on the larboard side and over the lower deck of the steamboat, through the alleged negligence of the defendants and their servants in the manner of hanging this small boat and in not preventing other passengers from getting into it.

The general principles of law by which the liability of the defendants is to be tested are well settled. A carrier of passengers for hire is not, like a common carrier of goods, an insurer against everything but the act of God and public enemies. He is not held to take every possible precaution against danger;

---

[*] This case was argued at Boston, in January 1868, before all the judges.

for to require that would make him an insurer to the same extent as a carrier of goods, and might oblige him to adopt a course of conduct inconsistent with the economy and speed essential to the proper dispatch of his business. But he is bound to use the utmost care which is consistent with the nature and extent of the business in which he is engaged, in the providing of safe, sufficient and suitable vehicles or vessels and other necessary or appropriate instruments and means of transportation, as well as in the management of the same, and in making such reasonable arrangements as a prudent man would make to guard against all dangers, from whatever source arising, which may naturally and according to the usual course of things be expected to occur. *Farwell* v. *Boston & Worcester Railroad Co.* 4 Met. 58, 59. *Ingalls* v. *Bills*, 9 Met. 15. *Shaw* v. *Boston & Worcester Railroad Co.* 8 Gray, 59, 66. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 233. *Le Barron v. East Boston Ferry Co.* 11 Allen, 315. *Stokes* v. *Eastern Counties Railway Co.* 2 Fost. & Finl. 691. *Ford v. London & Southwestern Railway Co.* Ib. 730. *Readhead* v. *Midland Railway Co.* Law Rep. 2 Q. B. 412. Compliance with positive statute regulations does not exempt the carrier from responsibility for neglect to observe all other reasonable precautions. *Bradley* v. *Boston & Maine Railroad Co.* 2 Cush. 539.

If the carrier fails in his duty, he is responsible for the consequences of his negligence, although the negligence or misconduct of a third party contributes to the injury. *Eaton* v. *Boston & Lowell Railroad Co.* 11 Allen, 500. He is as much bound to guard against the results of the acts of third parties as of any other cause the operation of which he can reasonably anticipate. Thus in *McElroy* v. *Nashua & Lowell Railroad Co.* 4 Cush. 400, the proprietors of a railroad were held liable for the careless management of a switch, forming part of their road, by the servant of another corporation owning a connecting road, because, in the words of Chief Justice Shaw, "as passenger carriers, the defendants were bound to the most exact care and diligence, not only in the management of their trains and cars, but also in the structure and care of their track, and in all the

subsidiary arrangements necessary to the safety of passengers." So in *Pittsburg*, *Fort Wayne & Chicago Railway Co.* v. *Hinds*, 53 Penn. State, 512, a mob of drunken men forced themselves into the ladies' car while stopping at a station, and, after the train had moved on, began to fight with one another, and in so doing injured a female passenger; and it was held that the railroad corporation was responsible for the injury if the conductor had not done all that he could to stop the fighting; but was not so responsible merely by reason of the drunken passengers' having been permitted to get into the car, because it appeared that the conductor and other servants of the corporation could not have kept them off, and the corporation, although bound to furnish men enough for the ordinary demands of transportation, was not bound to anticipate or provide for such an extraordinary occurrence.

In the present case, the defendants were bound to see that their officers, agents and servants, used the utmost care and diligence in keeping the steamboat constantly provided with suitable machinery, boats and appurtenances, and competent officers and crew, in controlling and managing the use of the vessel and appurtenances, and in making all the arrangements necessary to secure the passengers against any danger which might reasonably be anticipated from the action of the winds and seas, of the officers and crew, or of other passengers. They were not indeed responsible for the negligent or wrongful acts of the passengers to the same extent as for those of their own officers and crew. But they had the power to make reasonable regulations as to the places which passengers might occupy and as to their conduct while on board. And they were bound to use the utmost skill and care of prudent men in taking precautions to prevent any passenger from being injured by the ignorant, negligent or reckless acts of other passengers.

As to the larboard boat, the fact that it was hung in the place in which it was by order of the government inspector did not protect the defendants from responsibility for negligence in the manner of hanging or using it. They were still bound to use the utmost skill and care, consistent with the nature and extent

of their business, in so keeping it secured and preventing passengers from getting into it, as to guard against injury by its falling upon a passenger from any cause, including careless or irregular acts of other passengers, which might reasonably be anticipated. Whether the defendants failed in the degree of diligence required of them by law, either in not sufficiently securing the larboard boat, or in not taking measures to prevent passengers from standing under it or getting into it, and how far the defendants had reason to expect that passengers would get into it in such numbers and conduct themselves there in such a manner as to endanger persons standing under it, were *questions of fact.* The final instructions given to the jury, at the request of the plaintiff's counsel, clearly and accurately expressed the legal measure of the defendants' liability.

It was argued for the defendants that the evidence showed that they had exercised the requisite degree of care, by hanging the larboard boat in as inaccessible a place as was consistent with readily lowering it in case any of the passengers or crew should fall overboard, by providing it with tackle, bolts and fastenings of the best quality and of sufficient strength to bear the weight of as many persons as it would accommodate, by guarding it with a rail around the promenade deck, and by establishing rules prohibiting passengers from going into the boat or outside the rail. But whether the defendants had in these or other respects omitted any precautions which might reasonably be required of them was a question of fact. It does not appear by the bill of exceptions that all the testimony is reported, or that the objection, taken at the argument, that all the evidence introduced was insufficient to warrant the jury in finding that the defendants had been negligent in any particular, was made at the trial. Upon the case as now presented, no opinion can therefore be properly expressed by this court upon that question.

If the plaintiff himself was wanting in ordinary care, and without such neglience on his part would not have been injured, even if the defendants were also negligent, he certainly cannot recover. But upon the question of his negligence the

evidence was conflicting, and that question was properly submitted to the jury.

The question put by the defendants to one of the witnesses, whether in his judgment the larboard boat was not manifestly to the discernment of passengers of common understanding an inappropriate place for passengers to be in, was rightly excluded, as asking for an opinion upon a subject which did not require any peculiar skill or experience to judge of, and which, so far as it was material, was to be passed upon by the jury. *Perkins* v. *Augusta Insurance & Banking Co.* 10 Gray, 312.

Evidence that passengers had been in the habit of sitting in the larboard boat so frequently and during such a period of time before the accident that the officers of the steamboat must have known of it, was admissible as tending to show their knowledge of that fact, and therefore competent upon the question whether they took proper precautions to prevent any danger which might reasonably be anticipated from such occupation. It would not, however, necessarily snow that they had any reason to suppose that such occupation would be dangerous.

But evidence of the disregard by passengers of the rules of the steamboat in going outside of the rails in other parts of the vessel, into the starboard boat, or upon the hurricane deck, had no tendency to show a use of the larboard boat by the permission or with the knowledge of the officers in a manner dangerous to other passengers. The starboard boat was nearer to the railing and more firmly supported than the larboard boat, and evidence as to the use of the one had no legitimate bearing upon the question of the use of the other. If the case had been left as it originally stood upon the admission of evidence of the use of both boats and the hurricane deck, it might be doubtful whether the incompetent evidence had been so distinctly objected to at the time of its admission as to entitle the defendants to a new trial. But it further appears that, on the subsequent motion of the defendants, the presiding judge refused either to strike out the incompetent evidence, or to instruct the jury to disregard it, or even to instruct them that the fact of passengers having disregarded the rules of the steamer in respect to the starboard

boat, the rails or the hurricane deck, had no tendency to show either any license, permission or custom affecting the larboard boat, or any danger of that boat's being improperly used by passengers   This refusal was clearly erroneous, and for this reason the exceptions must be sustained.

Having already stated the general rules of law applicable to the case, it does not seem to us to be necessary or useful to examine in detail the other instructions given or requested.

*Exceptions sustained.*