BRONSON v. OAKES et al.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1896.)

No. 729.

CARRIERS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    A passenger riding in the rear coach of a vestibuled train left the coach at night to go to the forward end of the train, and, to facilitate his return, left

open the door of the sleeping coach in which he was riding. The night was dark, the vestibule was not lighted, and the train was running rapidly. On his return, in passing through the vestibule which led into the coach in which he was riding, he supposed a dim, reflected light from the windows of the sleeper was a light shining through the door of the coach which he had left open, and proceeding, in the exercise of due care, to enter, as he supposed, the doorway of the coach, walked through an outside vestibule door, which had been left open, fell from the train, and was seriously injured. A demurrer to the complaint, setting out, in substance, the foregoing facts, was sustained in the lower court. *Held*: (1) Whether, upon the allegations of the complaint, the defendant was negligent, is the principal and ultimate fact of the case; and the decision of this fact, like any other disputed fact in a case, rests with the jury, and not with the court. And the question of contributory negligence is likewise one of fact for the jury. (2) When it is said that a given act does or does not constitute negligence in law, the statement means no more than that, in the judgment of all reasonable men,—not judges alone, for it concerns a fact, and not a question of law,—it would be esteemed such. When it can be affirmed that all reasonable men would agree as to the quality of an act, in respect of its being either negligent or prudent, the court may give effect to such consensus of opinion, and direct a verdict in accordance therewith: but this direction is not given because it is the judge's opinion alone, but because the judge is able to say that it is also the opinion that all reasonable men would entertain of the question. If there is doubt as to whether all reasonable men would draw the same conclusion from the evidence, then the question must be submitted to the 12 reasonable men appointed by the constitution to determine disputed questions of fact. (3) The defendants were under no legal obligation to provide vestibuled trains for their passengers, but, having done so, it was their duty to maintain them in a reasonably safe condition. The optical illusion which caused the plaintiff to walk out of an open door of the vestibule cannot be characterized as a negligent act. That optical illusion would have been harmless, but for the negligent act of the defendant. The vestibule was intended to prevent injury to the passenger while passing through it, from optical illusions as well as from any other cause. The plaintiff in error was not bound to anticipate the particular act of negligence on the part of the defendants which occasioned the accident.

In Error to the Circuit Court of the United States for the District of Minnesota.

This action was brought by M. E. Bronson, the plaintiff in error, against Thomas F. Oakes, Henry C. Payne, and Henry C. Rouse, as receivers of the Northern Pacific Railroad Company, the defendants in error, to recover damages for a personal injury received while traveling as a passenger on a train on the Northern Pacific Railroad, operated by the defendants as receivers. The action was commenced in the district court of Hennepin county, Minn., and, on the application of the defendants in error, removed into the circuit court of the United States for the district of Minnesota.

Omitting the formal parts, the complaint reads as follows:

"Plaintiff further alleges: That on the 30th day of December, 1893, this plaintiff, in company with his wife, took passage at the city of St. Paul, in the state of Minnesota, on a regular passenger train on said Northern Pacific Railroad, operated by said defendants, for the purpose of traveling over the same westward from said state to the Pacific coast, upon a route of said railway, conducted and operated by said defendants, and that the plaintiff duly purchased from the agent of said defendants at the said city of St. Paul the usual and regular tickets for such passage over said railway, and paid to said defendants the regular fare for said tickets for said passage and travel over said line of railway. That the said train consisted of the usual sleeping and day coaches, baggage and express car; and that said train was a 'vestibule train,' so called, with the passageways between said cars wholly inclosed in so-called 'vestibules,' each of said vestibules having an outer door opening upon the steps at the end of each of said cars, and which said so-called 'vestibules' were and are designed for the protection of passengers traveling upon trains operated by said defendants on said line of railway, and to enable

passengers to pass ·with safety through the passenger trains operated by said defendants; and that upon said train in which plaintiff was so traveling at the. time of the occurrence and consequent injury to plaintiff hereinafter mentioned there was maintained upon said train by said defendants free and uninterrupted access through said vestibules, for the accommodation and convenience of the passengers on said train, passing through the same, both in the night and day time, from car to car.

"Further complaining, plaintiff further alleges: That the passage from said city of St. Paul, Minnesota, over the line of said railway, to plaintiff's destination, does and did consume several days and nights of continuous travel; and plaintiff and his said wife, while so traveling on said train as aforesaid, and on the night of December 31, 1893, were occupying berths upon the rear sleeping coach of said train, and that at the hour of about 11:30 o'clock p. m. on the night of said day the plaintiff, as he lawfully might, and for the purpose of passing to the forward end of said train upon which he was so traveling, in order to obtain from the conductor in charge of said train a stop-over check at a.point on said line of railway where plaintiff desired to stop over on said journey, left said rear sleeping coach, and walked through said train towards the forward end thereof, for the purpose aforesaid, and, having transacted said business with the conductor in charge thereof, plaintiff started to return ·to his said berth in said rear coach at about the hour aforesaid. That at said time all of the coaches upon said train were dimly lighted, and that the vestibule connections between said several cars through which plaintiff, for the· purpose aforesaid, was compelled to and did pass had been and were by said defendants carelessly left and were in a wholly darkened condition, without any lights therein. That the outer door in one of said vestibuled connections, through which plaintiff so passed, had been by said defendants carelessly and negligently left unfastened and open, which fact was wholly unknown to this plaintiff. That plaintiff, in returning to said rear sleeping coach on said train at the time aforesaid, and in passing through said vestibule, ·as he lawfully might, and without any notice or knowledge on his part that said outer vestibule door was so open as aforesaid, and without any fault or negligence on his part, fell from said train through said open outer vestibule door, so carelessly and negligently as aforesaid left unfastened and open by said defendants, and, so falling, was precipitated from said train with great. force and violence, and then and there fell from said train, while said train was running at a rapid rate of speed, and while the same was passing over a certain lake in the state of Idaho, known as 'Lake Pend d'Oreille,' on a trestle bridge about 22 feet in height above the waters of said lake, into which plaintiff fell. That plaintiff, as a result of said fall, broke and fractured the bone of his left leg between the knee and the ankle joint, and was otherwise bruised, maimed, and wounded, thereby causing plaintiff great physical pain and anguish. That said place was in an uninhabited district, with no means near at hand whereby plaintiff could obtain aid or assistance; and that, plaintiff's fall from said train being unnoticed by the operatives thereof, the same passed rapidly beyond the sight and hearing of this plaintiff. That the point upon said bridge where plaintiff so fell as aforesaid from said train was distant about three-quarters of a mile from the shores of said lake. That the weather at that time was intensely cold, below the freezing point, and the ground covered with snow and ice; and that, although plaintiff was greatly exhausted and prostrated as the result of said fall, and was suffering great pain and anguish from his said broken limb, plaintiff nevertheless, by great physical exertion, and suffering intense pain from his broken limb, and there being no other means of escape from his perilous and dangerous position, was compelled to and did climb upon the piling of said bridge to the track thereon, and with great difficulty dragged himself along said bridge to the main land; and that by reason of the unfrequented district where said occurrence took ·place plaintiff was unable to and did not receive any aid or assistance until the hour of about 5 o'clock a. m. on January 1, 1894. That plaintiff's clothing was thoroughly and completely drenched with water, and by reason of the inclement weather his clothing froze upon his person, whereby plaintiff suffered additional pain and anguish and discomfort; and that, as a consequence of his said injuries and the attendant results therefrom, plaintiff's nervous

system was greatly shocked and impaired, and his health, as a consequence thereof, has been, as plaintiff is informed and verily believes, permanently undermined and impaired; and that plaintiff was confined to his bed for a long period of time thereafter, and suffered great mental and physical pain, anguish and suffering, caused by his said injuries and his exposure, and that he still suffers therefrom; and, as plaintiff is informed and believes, he will never recover from the effects of his said injuries and exposure as aforesaid.

"Plaintiff further alleges: That the forward end of the coach upon said train into which plaintiff was endeavoring to pass at the time he fell from said train as hereinbefore alleged had an inclosed compartment, occupying the entire width of said car, except a narrow aisle along the side thereof; and that persons entering said car, in order to pass through the same, are required to make a sharp turn to the left, and pass down said aisle. That said open outer vestibule door through which plaintiff so fell was on the left hand of plaintiff as he passed through said vestibule. That plaintiff, in passing through said vestibule, saw through said open outer vestibule door, but which opening he supposed and believed was the entrance into said car, a dim light, which shone through the windows of said car, and which light plaintiff supposed and believed was the light from the car shining through said passageway or aisle into which plaintiff supposed and believed he was passing. That when plaintiff passed out of said car, going to the forward end of said train, and a few seconds before he returned, plaintiff, to facilitate his return, left the end door of the coach into which he was about passing when he fell from said car open; and that the light which plaintiff saw through said open outer vestibule door he supposed and believed was the light from said car into which he was about passing, shining through said narrow aisle; and that plaintiff, so mistaking said light, visible through said open vestibule door, for the light shining through said aisle, turned to the left, for the purpose, as he supposed, of passing into said aisle, and, so turning, walked or fell through said open outer vestibule door, sustaining the injuries hereinbefore complained of.

"Plaintiff further alleges that it was the duty of the said defendants in operating said train, and particularly in the nighttime, to keep securely fastened and closed the outer vestibule doors on said cars, and to furnish sufficient light in said vestibules to enable passengers upon said train to pass in safety through the same; and that plaintiff suffered and sustained said injuries wholly by reason of the carelessness and negligence of said defendants in allowing and permitting said outer vestibule door on said train through which plaintiff fell as aforesaid to be and remain in said open and unguarded condition, and in failing to provide lights in said cars and vestibules, by reason whereof this plaintiff, without any fault or negligence on his part, as aforesaid, fell through said open outer vestibule door, thereby sustaining the injuries herein complained of."

After an answer had been filed, and the jury impaneled to try the case, the defendants asked and obtained leave to withdraw their answer and file a demurrer to the complaint. A demurrer was thereupon filed, the ground of which was that the complaint did not state sufficient facts to constitute a cause of action. The court sustained the demurrer, and rendered a final judgment in favor of the defendants, and the plaintiff sued out this writ of error, assigning as error the ruling of the court sustaining the demurrer.

Henry Conlin and Victor J. Welch (Marcus P. Hayne with them on the brief), for plaintiff in error.

J. H. Mitchell, Jr., for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is well settled that what constitutes negligence is a question of fact for the jury, and it does not cease to be such although the facts are undisputed, for that would be to deprive a suitor of his constitutional right to have the material facts in his case tried by

a jury. Whether, upon the conceded facts in this case, the act of the defendant was negligent, is the principal and ultimate fact in the case, and the decision of this fact, like any other disputed fact in a case, rests with the jury, and not with the court. The question of contributory negligence is likewise one of fact for the jury. There is no statute or law which defines the quality of every human action, and stamps it in advance as either negligent or prudent. The law cannot anticipate the conduct and actions of men in all the varying and multiplied relations they sustain to each other, and declare in advance what shall be esteemed prudent and what negligent. The facts and circumstances of this case as they are disclosed by the complaint differ from the facts and circumstances of any case that ever occurred before, or any case that is likely to occur in the future. It is manifest, therefore, that if the court should decide as a matter of law that these facts and circumstances do or do not constitute negligence in law, it would be a case where the decision made the law, and not the law the decision. And hence the doctrine is firmly established that these questions of negligence are questions of fact for the jury to determine, and not questions of law for the court; and this is the rule where the facts are conceded as well as where they are disputed. The only exception to this rule is found in that class of cases where a party has admittedly failed in the performance of a duty imposed by law, or where the act was done in pursuance of some requirement of the law. In this class of cases, when the conceded facts bring the case within the terms of the law, the court applies the law and declares the result.

In Railroad Co. v. Stout, 17 Wall. 657, 664, the supreme court said that:

"Although the facts are undisputed, it is for the jury, and not for the judges, to determine whether proper care was given, or whether they established negligence."

In Railroad Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 682, the court said:

"There is no fixed standard in the law by which the court is expected to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. * * * The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs."

In answer to the contention that the plaintiff in that case had been guilty of such contributory negligence as would preclude a recovery, the court said (page 428, 144 U. S., and page 687, 12 Sup. Ct.):

"It is earnestly insisted that, although the defendant may have been guilty of negligence in the management of its train, which caused the accident, yet the evidence in the case given by the plaintiff's own witnesses shows that the deceased himself was so negligent in the premises that, but for such contributory negligence on his part, the accident would not have happened. * * * To this argument several answers might be given, but the main reason why it is unsound is this:

As the question of negligence on the part of the defendant was one of fact for the jury to determine under all the circumstances of the case, and under proper instructions from the court, so, also, the question of whether there was negligence in the deceased, which was the proximate cause of the injury, was likewise a question of fact for the jury to determine, under like rules."

In Jones v. Railroad Co., 128 U. S. 443, 445, 9 Sup. Ct. 118, the lower court instructed the jury to render a verdict for the defendant upon the ground that the plaintiff had been guilty of contributory negligence, but the supreme court reversed the judgment, saying:

"But we think these questions [of negligence] are for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others."

It does not follow, however, that because it is the exclusive province of the jury to determine the question of negligence, that in no state of facts can the court withdraw the case from the consideration of the jury. Although the rule as to when the case is one for the jury and not for the court has been variously stated, the various statements have the same meaning. The rule is frequently laid down in these terms: That when the evidence in any given case is conflicting, or the facts disputed, or where the facts are of such a character that different minds might draw different conclusions from them, the case must be left to the jury for their determination. Another statement of the rule is that a case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. Probably the most satisfactory statement of the rule, and the one easiest to comprehend and apply (Scott v. City of New Orleans, 75 Fed. 373, 377), is that given by the supreme court in Railroad Co. v. Ives, 144 U. S. 417, 12 Sup. Ct. 683, where it is thus stated:

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the courts."

And in such cases the court merely declares the evidence is insufficient in law because insufficient in fact. When, therefore, it is said that a given act does or does not constitute negligence in law, the statement means no more than that in the judgment of all reasonable men—not judges alone, for it concerns a fact, and not a question of law—it would be esteemed such. When it can be affirmed that all reasonable men would agree as to the quality of an act in respect of its being either negligent or prudent, the court may give effect to such consensus of opinion, and direct a verdict in accordance therewith. The direction is given, not because it is the judge's opinion alone, but because the judge is able to say that it is also the opinion that all reasonable men would entertain of the question. If there is doubt as to whether all reasonable men would draw the same conclusion from the evidence, then the question must be submitted to the 12 reasonable men appointed by the

constitution to determine disputed or doubtful questions of fact. The rule on the subject is well stated and illustrated by Judge Cooley in delivering the opinion of the court in Railway Co. v. Van Steinburg, 17 Mich. 99, 118. The learned judge said:

"The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility [withdrawing the case from the jury], for, when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that, if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury. This question was very fully and carefully considered by the supreme court of Connecticut in Beers v. Railroad Co., 19 Conn. 566, and a rule was laid down, which has since been followed in that state, and is very succinctly stated in Park v. O'Brien, 23 Conn. 347, as follows: 'The question as to the existence of negligence or a want of ordinary care is one of a complex character. The inquiry, not only as to its existence, but whether it contributed with negligence on the part of another to produce a particular effect, is much more complicated. As to both, they present, from their very nature, a question, not of law, but of fact, depending on the peculiar circumstances of each case, which circumstances are only evidential of the principal fact,—that of negligence or its effects,—and are to be compared and weighed by the jury, the tribunal whose province it is to find facts, not by any artificial rules, but by the ordinary principles of reasoning; and such principal fact must be found by them before the court can take cognizance of it, and pronounce upon its legal effect.' It is a mistake, therefore, to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law. This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty."

Applying these well-settled rules to this case, the court is of opinion the complaint states a case upon which the plaintiff is entitled to go to the jury. The defendants were under no legal obligation to provide vestibuled trains for their passengers, but, having done so, it was their duty to maintain them in a reasonably safe condition. Railway Co. v. Glover (Ga.) 18 S. E. 406, 414. The purpose of the vestibuled cars is to add to the comfort, convenience, and safety of passengers, more particularly while passing from one car to another. The presence of such an appliance on a train is a proclamation by the company to the passenger that it has provided him a safe means of passing from one car to another, and an invitation for him to use it as his convenience or necessity may require. Whether, having provided vestibuled cars for their passenger trains, it was negligence in the defendants to leave the vestibule connection between two cars without light, and the outside door of the vestibule open without a guard rail or other protection while the train was running rapidly on a dark night, is a question of fact for the jury to determine. And if, upon the facts set out in the complaint, they should find that it was negligence, no court could disturb their finding.

The next contention of the defendants in error is that, conceding they were guilty of negligence, the plaintiff in error was guilty of contributory negligence which relieves them from liability. The act of the plaintiff in error in leaving the car door open to light him through the vestibule on his return would seem to be one of caution rather than one of negligence. It was not the physical cause of the injury, and in no manner contributed to it. The plaintiff in error supposed the dim light which shone through the windows of the car was a light shining through the doorway he wished to enter, and, while proceeding in the exercise of due care towards that light, he was precipitated out of the open door of the vestibule. The optical illusion under which he was laboring was to him a palpable fact until the disillusion came. Such an optical illusion would not ordinarily be anticipated by a man of common prudence, nor is it probable that the illusion would be dispelled until some palpable physical fact brought it to his attention. His action, therefore, having any relation to the accident, was not the result of a negligent act on his part, but the result of an optical illusion, for which he was in no manner responsible, and which cannot be characterized as a negligent act. Moreover, that optical illusion would have been harmless but for the negligent act of the defendants. The vestibule was intended to prevent injury to the passenger while passing through it, from optical illusions as well as from any other cause. In other words, it was designed to prevent every kind of injury that could be prevented by keeping the vestibule in a safe and proper condition. The plaintiff in error was not bound to anticipate the particular act of negligence on the part of the defendants which occasioned the accident. Hutchinson v. Railway Co., 32 Minn. 398, 21 N. W. 212; Weller v. Railway Co. (Mo.) 23 S. W. 1061; Railway Co. v. Sharp, 27 U. S. App. 334, 11 C. C. A. 337, and 63 Fed. 532; Sturdivant v. Railroad Co. (Tex. Civ. App.) 27 S. W. 170; Dickinson v. Railway Co., 53 Mich. 43, 18 N. W. 553; Low v. Railway Co., 72 Me. 313, 321.

In Low v. Railway Co., supra, in considering the question of contributory negligence under circumstances which make the utterance of the court on that subject quite applicable here, the court said:

"Defendants' counsel put the dilemma thus: 'If the night is light enough to see the gangway, no railing or light is necessary to enable a person to avoid it, and, if the night is too dark to allow of its being seen, then a person groping round in the dark, and unconsciously walking into it, is guilty of such negligence as to preclude him from recovering.' But, if this plausible statement is absolutely correct, there never can be an accident of this description for which the injured party can recover. The idea seems to be that there is no necessity for any precaution on the part of the wharf owners, because constant vigilance on the part of those who come there when it is light enough to see the danger will enable them to avoid it; and, duty or no duty, they must not come without a light in the nighttime, or they will be set down as wanting in ordinary care, and so forfeit their right to protection or compensation. The argument establishes, if anything, too much. The questions are not of a character to be disposed of by a little neat logic. They are rather, as remarked by the court in Elliott v. Pray, 10 Allen, 384, 'questions which can be best determined by practical men on a view of all the facts and circumstances bearing on the issue.' No such sweeping syllogism as this presented by defendants' counsel can be adopted as a rule of decision. A man may be deceived by a half light, such as is described

in the testimony here, and, using due care himself, may meet with an accident by falling into a chasm where he was not bound to expect to find one unguarded; and in such case, if he is not a mere licensee or trespasser, and the owner of the premises owes him a duty, he is entitled to his remedy."

In the case at bar it is not contended that the defendants in error did not owe the plaintiff in error the positive duty of keeping the vestibule in safe condition.

In Dickinson v. Railway Co., supra, the court said:

"But he was not negligent in failing to look ahead, unless he had reason to anticipate some such danger; and, if we are correct in what we have already said, he had no such reason. He had a right to assume that the defendant would perform its duty in guarding the safety of its passengers and servants; and it was only because it had failed to do so in this instance that the danger was encountered. The plaintiff had no warning * * * until the bins were so near that it was impossible to avoid striking them, and why should he have looked for dangers whose existence he could not have anticipated?"

Without pursuing the subject further, we think, upon the averments of the complaint, the plaintiff in error was not guilty of contributory negligence which was a proximate cause of his injury; but this, like the question of the negligence of the defendants in error, is a question for the jury. In Railway Co. v. Kellogg, 94 U. S. 469, the supreme court said:

"The rule is that what is the proximate cause of an injury is ordinarily for the jury. It is not a question of science, or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. * * * But the inquiry must be answered in accordance with common understanding."

And, referring to the refinements of the schoolmen upon the question, the court said:

"Such refinements are too minute for rules of social conduct."

The judgment of the circuit court is reversed, and the cause remanded, with instructions to overrule the demurrer and grant a new trial.