## LOUISVILLE & NASHVILLE R. R. CO. v. ALEXANDER HUTCHERSON.

Middle Section. May 15, 1928.

Petition for Certiorari denied by Supreme Court, December 22, 1928.

Ed. T. Seay, of Nashville, for plaintiff in error.

J. T. Baskerville, of Gallatin, for defendant in error.

OWEN, J.  The Louisville and Nashville Railroad Company hereinafter called defendant has appealed from a judgment rendered against it in favor of the plaintiff in the sum of $5,000 in the circuit court of Sumner county, Tennessee.  The plaintiff's declaration contained two counts, by the first count plaintiff alleged that on the 20th day of August, 1926, he was a passenger on the train operated by the defendant between Louisville, Kentucky and Gallatin, Tennessee.  The plaintiff purchased a ticket for Gallatin, Tennessee, boarded a passenger coach of the defendant in Louisville, Kentucky, about 10 p. m.  Said train was due at Gallatin at 2 a. m.  Gallatin was a flag station for this train.  Just before reaching Gallatin the conductor directed the plaintiff to go to the vestibule door of said coach and be ready to get off at Gallatin.  The train was running at a rapid rate of speed of sixty miles an hour.  Acting upon this advice and directions, the plaintiff took his two suit cases and went into the vestibule between the coach he occupied during the early part of the night, which was called the ladies coach, and a coach in front of the ladies coach, and upon entering the platform the train gave a sudden lurch and the plaintiff was hurled from the vestibule through the door of the vesti-

bule which had come open. Plaintiff's right arm was broken, he received serious cuts upon his head and body.

That the defendant was guilty of gross and wanton negligence in opening and having open the said vestibule door while the train was running between stations, and in directing or permitting plaintiff to go into said vestibule while the door was open without giving him notice of this fact, and without warning him of the danger of entering said vestibule while said door was open. The second count of the declaration alleged that the defendant company, after plaintiff was thrown from the train and injured, as set forth in the first count, wrongfully and negligently permitted the plaintiff to remain in a helpless and exposed condition on its roadbed without medical aid or other attention for about five hours, whereby plaintiff was caused to suffer additional and unnecessary pain and suffering.

To the declaration and each count thereof, the defendant filed a plea of not guilty. At the conclusion of all the evidence the defendant made a motion for a directed verdict, this motion was sustained as to the second count; overruled as to the first count. The jury returned a verdict for the amount of the judgment heretofore stated. The defendant seasonably filed its motion for a new trial containing many grounds which was overruled, an appeal perfected to this court. The defendant has assigned twenty-three errors which errors we have divided into four groups and they raise the following propositions:

Group 1. By errors 1 and 2 it is insisted that there is no evidence to sustain the judgment of the lower court; that defendant's motion for a directed verdict should have been sustained and the plaintiff's suit dismissed.

Group 2. Consists of assignments 22 and 23 which complained of the excessiveness of the verdict and judgment.

Group 3. Assignments, 3, 4, and 5 consist of long excerpts from the court's charge and said assignments insists that the charge of the court is erroneous.

Group 4. The 6th assignment insists that the court did not charge defendant's theory and assignments 7 to 21 inclusive insists that the court erred in failing to charge fifteen special requests offered by defendant.

We will not set out the special requests in this opinion, they cover fifteen pages of the transcript, the charge of the court covers twelve pages of the transcript and the excerpts from the charge made the basis of assignments 3, 4, and 5 cover five pages of the transcript.

The court gave defendant's special request No. 14 and denied the other fifteen, stating as his reason for refusal that the substance had been given in the original charge. This case was ably argued at the bar by counsel for both parties and we have been furnished with elaborate briefs in support of the various propositions made by the

contending parties. Counsel for defendant submits the following propositions of law in support of their contentions:

A carrier of passengers is not an insurer of the safety of its passengers, but is held to the exercise of the highest degree of care and foresight for the passenger's safety. This applies to the selection and use of suitable carriages, motive power, appliances and servants, as well as to the proper construction and maintenances of the roadbed and tracks. Railroad v. Kuhn, 107 Tenn., 106; Railroad v. Elliott, 1 Cold., 611; Railroad v. Hones, 9 Heisk., 27; Railroad v. McKenna, 7 Lea, 312.

If the instrumentalities are interfered with by a third person during the course of transportation and injury to a passenger results, the carrier is not liable unless its agents or servants knew, or by the exercise of reasonable care could have known of the changed condition and had opportunity to remedy it or otherwise prevent the injury.

A railroad company is not bound under the law to vestibule its trains, but when it does so, it must exercise reasonable and proper care to see that the doors of the vestibule are closed while the train is in motion.

It was not negligence for the conductor of the railroad train to announce the station of Gallatin and direct the passenger to go to the door preparatory to getting off. This did not justify the passenger in going out into the vestibule and riding there before the train reached the station. Shannon's Code, Section 3070; Diggs v. Railroad, 156 Federal, 564; Payne v. Railroad, 106 Tenn., 167.

Counsel for the plaintiff insists as follows:

A common carrier of passengers by vestibuled trains is required to exercise the highest degree of care, consistent with the practical operation and management thereof, to keep the vestibule doors closed while the train is in motion between stations; and especially when its agents and servants in charge of its train know that such vestibule doors are frequently opened and left open by passengers. N. & C. R. R. Co. v. Messino, 1 Sneed, 221; Chicago, etc., R. Co. v. Simpson, 87 Ark., 335, 112 S. W. 875; St. Louis I. M. Ry. Co. v. Oliver, 123 S. W. 662 (Ark.); Cincinnati Traction Co. v. Leach, 95 C. C. A., 47, 169 Fed., 549; Crandall v. M. St. P. & S. S. M. Ry. Co., 105 N. W., 185 (Minn.) 21 R. A. (N. S.) 645; Railroad v. Hatch, 116 Tenn., 580, 590; Johnson v. Yazoo & M. V. R. Co., 47 So. 785 (Miss.), 21 L. R. A. (N. S.), 312-313-314, Notes; Wagoner v. Wabash R. Co., 118 Mo. App. 239, 94 S. W., 293; Ferry Companies v. White, 99 Tenn., 256, 264-271; Bronson v. Oaks, 76 Fed., 734, 22 C. C. A., 520, U. S. App., 413; Craft v. Boston Elevated Ry. Co., 211 Mass., 374, 97 N. E., 610, 39 L. R. A. (N. S.), 878; Chicago, etc., R. Co. v. Ferguson, 74 Kan., 253, 86 P. 471; Simmons v. Steamboat Co., 97 Mass., 361 (S. C. 93 Am. Dec. 99); Johnson v. St. L. & S. F. R. Co., 130 S. W. 413 (Mo. App.); 10 Corpus

Juris, page 900 et seq.; 10 Corpus Juris, pages 861-862; Vol. 2, Hutchinson on Carriers (3 Ed.), secs. 980, 981; Kearney v. Oregon R. & Nav. Co., 115 P. 593 (Ore.); Rovinson v. Chicago & A. R. Co., et al., 97 N. W. 689 (Mich.); Northern Pac. Ry. Co. v. Adams, 116 Fed., 324 (C. C. A. 9th).

When a passenger on a vestibule train, without negligence on his part, falls or is thrown through an open vestibule door of such train a prima-facie case has been made by such passenger which raises a presumption of negligence on the part of such carrier, which the carrier has the burden of overcoming. Chicago R. I. & P. Ry. Co. v. Dizney, 160 P. 880, 61 Okla. 176.

The facts briefly stated in regard to this accident are as follows:

The plaintiff was thirty-one years old, a native of Sumner county. He had been working, just prior to the accident, in the state of Indiana, as a farm laborer receiving $35 per month, his board and laundry. He was returning to his home in Sumner county..

The defendant operates a vestibule passenger train between Louisville, Kentucky, and Nashville, Tennessee, this train left Louisville about 10 p. m. passing Gallatin, Tennessee, to which point plaintiff had bought a ticket, about 2 a. m. This train was made up of Pullmans, coaches, mail and baggage cars and made but two regular stops between Louisville, Kentucky, and Nashville, Tennessee, Elizabethtown and Bowling Green, Kentucky. It would stop on being flagged at Lebanon Junction, Franklin, Kentucky, and Gallatin, Tennessee. In other words, the agent at the flag station would flag this train to let passengers get on that were going to Nashville, and passengers could get on at Louisville and the train would stop at either one of these three flag stations to discharge a passenger who had gotten on the train at Louisville with a ticket for one of the named flag stations. At Louisville the porter looked after loading the passengers for the two passenger coaches.

A vestibule train is a train that is closed between each car with vestibule doors. Vestibule doors open just like any other door. There is a trap that is raised so that the passengers can enter or depart by means of the steps that lead from the outside of the coach into the coach. This trap door comes down over the steps when the train is ready to get in motion and the trap door makes a part of the floor of the platform, and when the trap door is lowered and the vestibule door is closed that makes the vestibule platform inclosed and safe. The door fastens with a catch.

On the night of the accident, this train stopped at Lebanon Junction to receive a passenger by the name of Carter who was an engineer of the defendant company but who rode as a passenger on said train to Nashville, Tennessee. The conductor and porter could not remember whether this train stopped at Franklin, Kentucky, or not. The conductor said the train sheets would show. The train sheets were not

introduced. Gallatin is about twenty miles south of Franklin, Kentucky. It appears that the vestibule doors were closed at Bowling Green, Kentucky, when the train left that station. Bowling Green is about forty miles from Gallatin. Just before the train reached Gallatin the conductor came in the ladies' coach where the plaintiff was riding, took from plaintiff his check which had been given when plaintiff gave up his ticket, and plaintiff testified that the conductor ordered plaintiff to go to the door, the conductor stating, "you go ahead to the door, the train will be there in just a minute or two."

We quote from plaintiff's testimony as follows:

"A. I got my suit case ready and went to the door. I went to this first door that leads into this little vestibule and I opened this door. This door was shut and I opened it. I set the suit case down that was in my left hand and I shut this door back like I found it, and then I picked up the suit case and it didn't take a minute for a step I know before I was on the ground; the suction and the swing of the train snatched me out.

"Q. Did you know, you say you knew that was a vestibule train? A. Yes sir.

"Q. And when you went out of the door of the car into the vestibule, did you know at the time that there was any opening out there through which you might fall? A. No sir, I thought it was safe, as being on the inside.

"Q. You had ridden on the train before? A. Yes sir, I had ridden this train.

"Q. Did you see anything when you went out into the vestibule to indicate any danger? A. No sir.

"Q. Did you see the step platform open or the shuttle door open in the vestibule? A. No sir, I didn't see that open.

"Q. And what happened to you, you say, which side of the train did you fall out of? A. It was the left side, the left door.

"Q. Do you know about how fast the train was running? A. No sir.

"Q. Do you know about at what point it was when you fell out? A. No sir.

"Q. Well, were you conscious when you were on the ground at that place, or when did you first know about the situation? A. Well, I don't remember but one thing before I woke up down at the hospital. There was a freight train come along sometime that night and I got up and tried to flag it.

"Q. And that is all you remember? A. Yes sir, that is all I remember.

"Q. The next thing you remember when you were at the hospital? A. At the hospital.

"Q. At Dr. Barr's at Nashville, Tennessee? A. Yes sir.

"Q. How long were you in the hospital, Alex? A. Thirteen days.

"Q. Well, when you came to your consciousness did you realize your condition? A. Yes sir.

"Q. What did you find your condition to be? A. It seemed like pretty bad."

Objected to by defendant.

"A. All tore up."

Just when this door came open or whether it was opened by the train crew at Franklin, Kentucky, and not properly closed, does not appear. The conductor and porter testified that it was their custom to go through the coaches quite often and inspect the vestibule doors, and while they do not have any independent recollection of this door, on the night of the accident, being open, they think it was closed all the time and their testimony indicates that it was closed when they arrived at Gallatin and missed the plaintiff. The conductor knew that he had a passenger for Gallatin but no one got off. We are of the opinion that the direction of the conductor to the plaintiff to go to the door and be ready to get off was a direction to go out into the vestibule platform so that he could get off quickly and not delay the train. From common knowledge we know that a fast passenger train does not expect to wait long at a flag station. When the conductor invited or directed the plaintiff to go to the vestibule and be ready to get off it was the conductor's duty, or some other employee of the defendant, to know that the vestibule was in a safe condition. We are of the opinion that under all the facts of this case, the plaintiff was not guilty of contributory negligence in going to the vestibule when he did for the purpose of alighting from the train when it stopped. It is insisted that some passenger might have opened this door of the vestibule between Bowling Green and the place of the accident, but there is no proof that any passenger touched this door that night or that any passenger was in the vestibule between Bowling Green and the time plaintiff entered the vestibule, except the witness Carter who testified that he stood in this vestibule for a while just after leaving Bowling Green and that the door was then shut. We are of the opinion that there is material evidence to sustain a verdict for the plaintiff. It results that the first and second assignments of error are overruled.

We will next dispose of Group No. 3 which assignments complain of the errors in the charge of the court.

In the charge excepted to, under Assignment No. 3, the jury is told that it is the duty of the railroad company to exercise at least ordinary care to see that these doors are closed and kept closed while the train is in motion. In explaining what is meant by "ordinary care," the court said:

"That is, for the employees in charge of the train to do what is reasonably possible, in consideration of their other duties, to see to it that these doors are closed."

The court further stated to the jury in this charge that if an employee in charge of the train directs a passenger to get his grips and come to the door and be ready to get off, it is the duty of the railroad company or its servants to exercise the highest degree of care to see that the doors of the vestibule are closed so that a passenger who has been invited to come to the door and be ready to get off may safely go upon the vestibule.

In a subsequent portion of the charge referred to in this assignment, and which is not complained of, the trial judge charged the jury that if the train crew properly closed the vestibule doors when the train started, and the doors were opened by some one else besides the train crew and the train crew did not know they were open, and could not, by the exercise of reasonable care, have known that they were open, and a passenger goes out on the platform and is injured by reason of the open door, then the railroad company would not be liable.

The error complained of under Assignment of Error No. 4 is that the trial judge charged the jury that it was incumbent upon the railroad company to exercise the highest degree of care to be *sure* that the doors were closed, and the vestibules *safe* for the passenger to be upon it where the passenger is directed or invited to go to the door and get ready to get off.

The charge complained of under Assignment of Error No. 5, in substance, told the jury that if the train employee negligently directed the plaintiff to go to the door preparatory to getting off when the door of the vestibule was open, and pursuant to this invitation or direction the plaintiff went to the door of the car, opened it and stepped out into the vestibule thinking it was safe, when one of the doors of the vestibule was open and in consequence of this he was drawn from the train while it was in motion, the railroad company would be liable.

The complaint made as to the foregoing portions of the court's charge, is in regard to the court using the word *sure* in stating that the employees should be *sure* that the vestibule doors were closed when a station was announced and the passenger directed to go to the door preparatory to getting off. It is insisted that this is error because telling a passenger to go to the door did not authorize him to go into the vestibule, and that the language of the court in his charge relieved the passenger of any duty of ordinary care on his part. We are of the opinion that the language used by the court in his charge is not reversible error. We are of the opinion that a passenger has a right to go upon the vestibule while the train is in motion, expecting and relying upon the fact that the doors are closed.

It is common knowledge that many vestibule trains carry diner and observation cars. Passengers are invited to the diner at certain times during the day of their journey and they can only reach the diners in safety by going through closed coaches. In the N. C. R. R. Co. v. Messino, 1 Sneed, 221, our Supreme Court said:

"When a railroad company engages in the business of common carriers, they undertake that the road is in good travelling order and fit for use; and that the engines and carriages employed are roadworthy and properly constructed, and furnished according to the present state of the art, and if an injury results from the imperfection of the road, the carriages, or the engines, the company is liable unless the imperfection was of a character in no degree attributable to their negligence. They are also bound for a due application on the part of their servants and agents of the necessary attention, art, and skill, and if the injury to the plaintiff *might have been avoided by the utmost degree of care and skill on the part of the agents and servants of the company, they are liable.*" He further charges "that if the injury occurred by running faster than a prudent, skillful conductor would have run on that part of the road, or on account of coming in collision with an obstruction which the conductor saw, or might have seen if he had been looking in a proper direction, or which he might have avoided by the most skillful and prompt use of all the means in his power, the defendant would be liable."

This principle was announced in the early history of railroads in Tennessee. We had no vestibuled trains; vestibuled trains are of comparatively recent origin. We have no reported case from our Supreme Court involving an injury to a passenger by falling from trains through a vestibule door.

However, there are many cases in other jurisdictions upon the subject, especially the well-considered case of St. Louis, I. M. & S. Ry. Co. v. Oliver, 123 S. W., 662 (Ark.), in which the rules declared by the trial judge in the pending case were upheld as follows:

"A common carrier of passengers is not under any legal obligation to provide upon its line of railroad vestibuled trains, although such trains are apparently safer than the others and have come to be in general use; but, when the carrier has provided vestibuled trains, it is his duty to maintain them in a safe condition. It then becomes the positive duty of the carrier in the operation of such trains *to use the highest degree of care consistent with the practical operation and management thereof to see that every appliance connected therewith is kept in repair and in safe condition.* The passenger has the right to assume that the vestibules provided are carefully managed, and that they are convenient and safe. The principles generally recognized as fundamental in the law of carriers of passengers are applicable to these new appliances. 2 Hutchinson on Carriers, 927;

Bronson v. Oakes, 76 Fed., 735, 22 C. C. A., 520; Crandall v. M., St. P. & S. S. M. Ry., 96 Minn., 434, 105 N. W., 185, 2 L. R. A. (N. S.), 645, 113 Am. St. Rep., 653; Sansom v. Southern Ry. Co., 111 Fed., 887, 50 C. C. A., 53; Northern Pac. Ry. Co. v. Adams, 116 Fed., 324, 54 C. C. A., 196; 4 Elliott on Railroads, 1589A; Chicago, Rock Island & Pacific Ry. Co. v. Simpson, 87 Ark., 335, 112 S. W., 875. The degree of care that is required of the carrier in furnishing sound and safe appliances in its vestibuled trains, and seeing to it that those appliances are kept at all times safe and sound while its trains are carrying passengers, is not one of ordinary care, but the *carrier "is bound to the utmost diligence which human skill and foresight can effect,* and if injury occurs by reason of the slightest omission in regard to the highest perfection of all the appliances of transportation, or the mode of management at the time the damage occurs, the carrier is responsible." George v. St. L., I. M. & S. Ry. Co., 34 Ark., 613. In the case of Pennsylvania Company v. Roy, 102 U. S., 451, 26 L. Ed., 141, Mr. Justice Harlan, in speaking of the degree of care that is required of the carrier, says:

"He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance aided by the highest skill; and this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger. Among the duties resting upon him is the important one of providing cars or vehicles adequate; that is, sufficiently secure as to strength and other requisites for the safe conveyance of passengers. That duty the law enforces with great strictness. For the slightest negligence or fault in this regard, from which injury results to the passenger, the carrier is liable in damages." It is the duty of the carrier not only to provide the vehicles which are thus safe, but he must use the same vigilance and care in keeping the appliance with which such vehicles are equipped in a safe and suitable condition. 2 Hutchison on Carriers, 911.

One of the chief objects of a vestibuled train is to furnish to the passenger a safe and convenient way of passage from one car to another; and in order for such passageway to be safe, ordinary prudence demands that the trapdoors should be over the steps. It was not only the duty of the servants of the defendant in this case to close these trapdoors, but it was their further duty to exercise the highest care to see that they were kept in this condition. In the case of Wagoner v. Wabash R. Co., 118 Mo. App., 239, 94 S. W., 295, the majority of the court says:

"It is the opinion of the court that the railroad company is not only answerable for the negligent acts of its servants in opening the vestibule doors and permitting the same to remain after having been opened by them, but it is responsible as well for its failure to exercise

a high degree of care, to the end that the same are closed and the vestibule reasonably safe for use, even though they are opened by others than defendant's servant.'' In this case it became a question for the jury to determine whether, under the circumstances, the defendant exercised that high degree of care and vigilance in closing and keeping closed the trapdoor over the steps, and there was some evidence to warrant the finding that such high degree of vigilance and care was not exercised by the servants of the defendant in charge of train.

It was not a negligent act for the plaintiff to pass from one car to the other: He had a right to assume that it was safe to pass, and that all appliances were in order and in proper position. In the case of Bronson v. Oakes, 76 Fed., 735, 22 C. C. A., 520, Judge Caldwell said: ''The presence of such an appliance on a train is a proclamation by the company to the passenger that it has provided a safe means of passage from one car to another and an invitation for him to use it as his convenience or necessity may require.'' Robinson v. United States, etc., Society, 132 Mich., 695, 94 N. W., 211, 102 Am. St. Rep., 436. All that was required of the plaintiff in going from one car to the other was to exercise ordinary care and prudence.''

The following was the holding in Chicago, R. I. & P. Ry. Co. v. Dizney, 160 P., 880, 61 Okla., 176:

''In this connection you are instructed that if you believe from the evidence in this case that the train on which the plaintiff was riding was a vestibule train, and that the trapdoor in the floor of the vestibule on the coach in which plaintiff was riding was permitted to be opened while the train was in motion and by the use of *the utmost diligence* the defendant could have had such trapdoor closed, and that said plaintiff, in attempting to pass from one coach to another on said train, without negligence on his part, fell through such trapdoor, and thereby sustained the injuries complained of in his petition, and that the open trapdoor was the proximate cause of said injury, then a prima-facie case has been made by plaintiff which raises a presumption of negligence on the part of the defendant company, which the defendant has the burden of overcoming to your satisfaction.''

It results that assignments 3, 4, and 5 are overruled. We will next consider Group No. 4. We are of the opinion that the court charged fully the defendant's theory as to how this accident occurred and especially when the court granted and charged the defendant's special request No. 14. The sixth assignment is overruled.

We are of the opinion that the court was not in error in refusing the fifteen special requests offered by the defendant. Taking the charge as a whole, we are of the opinion that the defendant was not prejudiced by this charge; that the jury fully understood the theory of each litigant. In nearly every special request the court had stated

the substance of the request while the special request was more elaborate than the court's statement in the original charge. We are of the opinion that the defendant was not entitled to have these special requests charged.

Applying Chapter XXXII of the Acts of 1911, to the instant case, this judgment should not be reversed for the reasons complained of in regard to the charge to the jury and in the refusal of the court to charge the fifteen special requests. It results that assignments 17 to 21 inclusive, are overruled.

On the question of the verdict being excessive; there is proof that this young man is permanently disabled. He was strong physically and in perfect health prior to the accident. At the time of the trial, which was more than a year after the accident, the plaintiff was totally disabled; the trial judge and the jury saw the plaintiff's scars and the injuries done his person. The jury reported a verdict for $5000. The trial court approved this amount. We are of the opinion that it is not excessive, it results that all the assignments of error are overruled, the judgment of the lower court is affirmed. Judgment will be entered here against the defendant for $5000 with interest from the date said judgment was entered in the lower court and all the costs of the cause for which execution will issue. The defendant and its surety on the appeal bond will pay the costs of the appeal.

Heiskell and Senter, JJ., concur.