## SANSOM v. SOUTHERN RY. CO.

### (Circuit Court of Appeals, Sixth Circuit. November 11, 1901.)

### No. 952.

CARRIERS—DEATH OF PASSENGER—EVIDENCE OF NEGLIGENCE.

Plaintiff's intestate purchased tickets over defendant's railroad, and took a train which was advertised as a "solid vestibule train." Having occasion to obtain a ticket at a station for a member of his party, he requested the conductor to purchase it; but the conductor refused, and advised him that the train made but a short stop, and he had best go to the front end, which stopped nearest the station. On reaching the platform of the front car, which was a day coach, used for local business, and not vestibuled, a sudden lurch of the train threw him off, and he was killed. The accident occurred in the daytime, and at a place where the country was hilly and there were many curves in the road. Action was brought to recover for his death on the ground of defendant's negligence. Plaintiff introduced expert testimony which tended to show that the lurching of the train might have been caused by a low joint in the rail or by excessive speed, but there was no proof of either. On the contrary, defendant's evidence that the track was in good condition and the speed not excessive was uncontradicted. *Held,* that the placing of a car without vestibules in the train could not be considered negligence, and the fact that it was advertised as a solid vestibuled train was not material, since the action was not grounded on a breach of contract, and the condition of the car was apparent; that there was no evidence upon which negligence on the part of defendant could be predicated, and a verdict for defendant was properly directed.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This case was brought to recover for the alleged negligence of the railroad company in causing the death of the plaintiff's intestate, James J. Cowan. The testimony, taking the view thereof most favorable to the plaintiff, tended to establish the following facts: Mr. Cowan, having occasion to travel on the railroad of the defendant company, wrote to a friend for a schedule of the company's trains, and received in answer a time-table, which, among others, gave the time of train No. 5, upon which he subsequently took passage. This folder or schedule contained the following statement as to this train: "Through Car Service. No. 5 carries Pullman drawing room buffet sleeping car New York to New Orleans without change, also from Chattanooga to Shreveport. This is a solid vestibuled train Washington to

Memphis, carrying Pullman drawing room, sleeping car and day coaches without change." The deceased took passage at Johnson City. Accompanying him were his wife and son and a young lady. The train contained four passenger cars, besides express and baggage cars. The vestibuled cars were three in number,—two sleepers in the rear of the train, then a vestibuled day coach,—and following an ordinary passenger coach, without vestibules. The young lady had no ticket beyond Morristown, and it became necessary to purchase a ticket for her. Mr. Cowan, for this purpose, asked either the regular conductor or the Pullman conductor to purchase the ticket at Morristown. This the conductor declined to do, and advised Mr. Cowan that it would be necessary for him to purchase the ticket, that the train stopped but a few minutes at Morristown, that the forward part of the train would be nearest the office, and that he would have to get off promptly; and thereupon the deceased started forward through the train, having obtained from the young lady the money with which to purchase her ticket. He passed through the vestibuled cars, and reached the vestibule on the car just back of the day coach, which had no vestibule, when a lurch of the train threw him against the accordion part of the vestibule. Gathering himself, he passed upon the platform of the car without a vestibule, when another lurch threw him backward from the train, resulting in injuries which caused his death. These lurches are described by some of the witnesses as being severe and unusual. Had this coach been provided with a vestibule, the injury could not have happened. At the time the deceased was thrown from the train it was rounding one of the curves, which are quite numerous in the company's road, owing to the contour of the country. Expert testimony was also introduced by the plaintiff tending to show that the violent, recurring lurches should not occur on a properly constructed road; that such lurches indicated either a low joint, or that the train was running with too great velocity; the expert stating in this connection that a train might safely run at a rate of from 50 to 60 miles an hour if the track was properly constructed. The defendant introduced testimony tending to show that the train was not running to exceed 45 miles an hour; that the track was in good condition and properly constructed, the appliances safe, and the management proper. The plaintiff relied for recovery upon negligence of the company in four respects: "(1) In failing to provide a solid vestibuled train after it had been advertised, and failing to warn Mr. Cowan of the danger resulting from the absence of vestibules; (2) in instructing him to go forward without warning him of the danger; and either (3) in allowing a low joint in the rail in the curve, causing the lurches that threw Mr. Cowan from the train; or (4) in the negligent handling of the train which caused these lurches." At the conclusion of the testimony the trial judge instructed the jury to return a verdict upon the testimony in favor of the defendant.

Edward T. Sanford, for plaintiff in error.

Leon Jourolmon, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

In cases where the propriety of the court's action in instructing a verdict for the defendant is in review, certain general principles are to be borne in mind. The view of the case most favorable to the plaintiff is to be taken in determining whether the case is to be submitted to a jury. In cases of alleged negligence where the facts are undisputed the question of liability is often one of fact, not of law. Except in those cases where the law has clearly defined a specific duty, the omission of which may constitute negligence, the solution of the problem depends upon whether the conduct in question is deemed to be that of one of ordinary prudence under the

same or similar circumstances. Who shall determine this matter? Is it one of fact or law? A court may not set up its own standard of ordinary care, and require the party to conform to that, and permit a recovery or otherwise as it may determine the facts to show ordinary prudence, or the lack of it, in the conduct under investigation, except in cases where fair-minded men would be agreed that the facts did or did not show a want of due care. Judge Cooley concludes an elaborate discussion of the question in this way:

"If the case is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the presence or absence of due care, the judge would be quite justified in saying that the law deduced the conclusion accordingly. If the facts are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the judge should not be compelled to submit the question to the jury as one in dispute. On the contrary, he should say to them, 'In the judgment of the law, this conduct was negligent,' or, as the case might be, 'There is nothing in the evidence here which tends to show a want of due care.' In either case he draws the conclusion of negligence, or the want of it, as one of law." Cooley, Torts, 670.

This rule is in conformity with Railroad Co. v. Ives, 144 U. S. 417, 12 Sup. Ct. 679, 36 L. Ed. 485, and Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274.

Another principle is to be borne in mind in this connection, which requires the party charging negligence to prove it, and show not only the negligent act complained of, but as well the resulting injury to the plaintiff. Applying these general rules, did the plaintiff make out a case which required the submission of the right of recovery to a jury?

There is no statute or rule of law of which we are advised requiring the defendant to use vestibuled cars. It is true that it has been held, and we think properly so, that, where a company has undertaken to provide a vestibuled train, it is negligence to permit the appliances to be out of order, or to leave the doors carelessly open, so that passengers who rely and have a right to rely upon the safety and proper management of the train are injured thereby. It was so held in the case cited by counsel from the Eighth circuit court of appeals (Bronson v. Oakes, 22 C. C. A. 520, 76 Fed. 734), where the court held it was negligence to leave open an outside vestibule door through which a passenger fell at night; the testimony showing that the train was moving rapidly, the vestibule poorly lighted, and the passenger mistaking the open door for the car door, through which he intended to pass on his way through the train. In the present case the through cars were properly vestibuled. There was no defect in their construction or management. The fault, if any, was in putting an ordinary car, for the accommodation of local traffic, into the vestibuled train. For such purposes an ordinary car, without vestibules, would be more convenient, if not so safe as vestibuled cars. In the absence of any rule of law requiring all cars to be vestibuled, the negligence in this respect must consist in having, by the advertisement, held out to prospective passengers the assurance that this was a "solid vestibuled train," whereas it was broken, without notice, by the introduction of the car for local traffic, thereby inducing the passenger

to act upon the supposition that he was upon a solid train, and be less guarded in passing from car to car. 'Assuming, without deciding, that the deceased had a right to rely and did rely upon the statement in the folder, it must be remembered that this car was upon a train to be run in daylight. The want of a vestibule was plainly visible. This is not an action upon contract. There is no claim that the defendant agreed to carry the passenger upon a train of vestibuled cars. Was the railroad guilty of a want of care likely to produce injury in thus introducing a car where it must have been evident to those having occasion to use it that it was not provided with a vestibule? We think this question must be answered in the negative, and that there was no failure to observe that degree of care, precaution, and vigilance justly demanded by the circumstances, the absence of which constitutes negligence. Nor do we perceive any negligence in the statement of the conductor to the deceased that he could not purchase a ticket for him at Morristown, and that it would be necessary for him to go forward for that purpose. This was rather advice as to how the deceased could procure a ticket, than an order upon which he acted to his injury.

The expert testimony introduced by the plaintiff as to the cause of the lurch of the train might attribute it either to a low joint, or undue speed in rounding the curve. The same witness stated that a train might be properly run on such a curve at the rate of 50 to 60 miles an hour. The construction and the condition of the track was a matter susceptible of proof by the plaintiff as well as the defendant. The only testimony upon these subjects was that introduced by the defendant, which tended to show a properly constructed track, in good condition. There was no testimony tending to show excessive speed. This railroad, running through a hilly country, necessarily having frequent curves in its track, while bound to use the highest care in its construction and the management of its trains, cannot avoid the lurching incidental to such conditions.

Upon the whole case, we reach the conclusion that, deplorable as the consequences were, there was no substantial evidence tending to show a want of the care required in the transportation of passengers, and the trial court was warranted in so instructing the jury. The judgment will be affirmed.