ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. CHRISTIAN. (No. 1700.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1916. Rehearing Denied Jan. 4, 1917.)

1. CARRIERS ⊕⟹295(1) — PASSENGERS — DUTY AS TO VESTIBULE.

While a railroad is under no legal obligation to provide vestibuled trains for its passengers, having done so, it is its duty to use reasonable care to maintain them in a reasonably safe condition by keeping the doors and traps closed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1191; Dec. Dig. ⊕⟹295(1).]

2. CARRIERS ⊕⟹323 — PASSENGERS — ASSUMED RISK.

The doctrine of "assumed risk," as distinguished from contributory negligence, does not apply where a passenger is seeking recovery of damages for personal injuries due to carrier's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1346; Dec. Dig. ⊕⟹323.]

3. CARRIERS ⊕⟹348(5) — PASSENGERS — INSTRUCTIONS.

In action by passenger for injuries from falling through vestibule door or trap, it was not error to refuse defendant's requested instruction to find for it if the jury believed that plaintiff knew, or by the exercise of ordinary care could have known, that the trap and door of the vestibule was open when he went on the platform, and if they further believed that he was guilty of the slightest degree of want of ordinary care, etc., where the court had already instructed the jury that plaintiff could not recover if an ordinarily prudent person would not have gone upon the platform as he did, for, irrespective of the prior charge, the requested instruction was faulty and calculated to confuse.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403, 1405; Dec. Dig. ⊕⟹348(5).]

Appeal from District Court, Smith County; R. M. Smith, Judge.

Action by J. M. Christian against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

This is the second appeal of this cause (169 S. W. 1102). It was last tried on the same pleadings it was first tried on, and the testimony in the record now presented for consideration is not materially different from that in the record on the former appeal. The statement of the case made in the opinion disposing of the other appeal is acknowledged by the parties to be a sufficient one. That statement was as follows:

"In October, 1910, the appellant ran a special vestibuled train, in two sections, ten minutes apart, from Tyler, by way of Corsicana, to Dallas and return, to accommodate people attending the state fair. These trains were transported over the appellant's line to Corsicana, where they were transferred to the tracks of the Trinity & Brazos Valley Railway, and by the latter carried to Dallas and back to Corsicana, at which place they were again transferred to the appellant and brought over its line to Tyler. The appellee, J. M. Christian, was a passenger on the return trip from Dallas on the first section of that train. After leaving Corsicana, and some time near midnight, and while between stations, the appellee fell from the platform of the car in which he was riding, and sustained injuries for which he brought this suit.

"The testimony shows that after leaving Corsicana the appellee, in company with one Charles Erwin, went to the front platform of the coach in which he was riding, and stood there for some time. Erwin had a bottle of whisky, from which he drank and invited others to drink, and appeared to be under the influence of liquor. After the appellee and Erwin had been standing on this platform for some time Erwin rushed into the coach and announced that the appellee had fallen from the train. The door and 'trap' of that end of the coach were open, and presumably the appellee fell from the steps or platform by reason of the door and 'trap' being left open. The next coach in front of the car occupied by the appellee and his companions was the baggage car, and there was no occasion for passengers to pass upon that platform except in getting on and off the train at stations, or as a loitering place. The testimony was conflicting as to whether or not the appellee was intoxicated at the time he fell from the train. While admitting that he had previously taken several drinks of beer and whisky, he denied being under the influence of drink. He had no recollection of how he fell or what particular circumstance caused him to fall. The fall rendered him unconscious, and he remained by the side of the track in that condition for several hours until picked up by other parties the next morning. Charles Erwin, who was with him at the time, and who appears to have been the only eyewitness to the fall, did not testify upon the trial. After the information given to the train employés that the appellee had fallen, the conductor was requested to stop the train in order that friends might go back and look for him. This was refused upon the ground that the train was being run in sections, and the second section was only about ten minutes behind. Appellee's friends were therefore compelled to go on until the next station was reached, when they got off and returned on the next train going in that direction. Some time after sunup they found the appellee lying by the railroad track in an unconscious condition. He remained in that condition for some hours afterwards.

"The appellee alleged negligence in two respects: (1) In permitting the vestibule and 'trap' doors to be left open; and (2) in failing and refusing to stop and back the train to the place where the appellee had fallen off, or to stop the train so that the appellee's friends might go to his assistance. The appellant pleaded general denial, contributory negligence, and specially pleaded that the appellee was intoxicated at the time he fell from the train, and that his fall was directly and proximately caused by that condition."

On the last trial, as on the first, there was a verdict and judgment in appellee's favor for $1,500.

Marsh & McIlwaine, of Tyler, and E. B. Perkins and Dan Upthegrove, both of Dallas, for appellant. Simpson, Lasseter & Gentry and Price & Beaird, all of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The contention made on the former appeal, that the court should have per-

emptorily instructed the jury to find in appellant's favor is renewed on this appeal. It is insisted now, as it was then, that there was no testimony on which to base a finding that appellant was guilty of negligence, and, if there was, that it appeared as a matter of law that the risk appellee incurred in being in the vestibule of the car was one he should be held to have assumed; and, further, that he was himself guilty of negligence. In support of its view of the case appellant insists that, having provided its cars with vestibules when it need not have done so, it owed to appellee no duty to keep the outside doors thereof closed while the train was moving, unless it was in the attitude of having induced him, in use he made of the vestibule, to rely upon its doing so. We think appellant assumed that attitude when it provided the car with vestibules. The fact that the vestibules formed a part of the car was, we think, using the language of the court in Bronson v. Oakes, 76 Fed. 740, 22 C. C. A. 526, "an invitation for him to use it as his convenience or necessity might require." In the case cited it appeared that the plaintiff in going from one car to another in the nighttime mistook on open vestibule door for the door of the car he was attempting to go into, and fell through it. In reversing a judgment for the defendant, entered on demurrers to the plaintiff's petition, the court said:

"The defendants were under no legal obligation to provide vestibuled trains for their passengers, but, having done so, it was their duty to maintain them in a reasonably safe condition. Railway Co. v. Glover [92 Ga. 132] 18 S. E. 406, 414. The purpose of the vestibuled cars is to add to the comfort, convenience, and safety of passengers, more particularly while passing from one car to another. The presence of such an appliance on a train is a proclamation by the company to the passenger that it has provided him a safe means of passing from one car to another, and an invitation for him to use it as his convenience or necessity may require. Whether, having provided vestibuled cars for their passenger trains, it was negligence in the defendants to leave the vestibule connection between two cars without light, and the outside door of the vestibule open without a guard rail or other protection while the train was running rapidly on a dark night, is a question of fact for the jury to determine. And if, upon the facts set out in the complaint, they should find that it was negligence, no court could disturb their finding."

In the Georgia case (Railway Co. v. Glover, 92 Ga. 132, 18 S. E. 406), referred to in the excerpt from the opinion in the Bronson Case, negligence of the defendant (a street car company) was predicated, in part, on its failure to have the platform gate of its car closed. The court said:

"There may be no negligence whatever in failing to have gates for the very highest order of equipment may be dispensed with, provided the equipment is sufficient to come up to the standard of extraordinary diligence. This standard may be reached short of the very best or the superlative of the attainable. But, when a company has provided gates, due diligence might require it to use them, and failure to use them might be negligence in the given instance. Whether it would be or not is a question of fact

for the jury. * * * Extraordinary diligence may require the carrier to use what he has though it would not require him to have as much as he has provided."

We do not understand either of the three cases cited by appellant as holding to the contrary of those mentioned above.

In Sansom v. Railway Co., 111 Fed. 887, 50 C. C. A. 53, plaintiff's intestate had taken passage at an intermediate point on a train advertised by the defendant as "a solid vestibuled train from Washington to Memphis." The train in fact consisted of three vestibuled cars and one without vestibules, for use by other than through passengers. In passing from one of the vestibuled cars to the one not so equipped, the plaintiff's intestate fell to the ground and was killed. Affirming a judgment for the defendant on a verdict by the trial court, the appellate court, after stating that it knew of no statute or rule of law requiring the defendant to use vestibuled cars, said:

"The through cars were properly vestibuled. There was no defect in their construction or management. The fault, if any, was in putting an ordinary car, for the accommodation of local traffic, into the vestibuled train. For such purposes an ordinary car, without vestibules, would be more convenient, if not so safe as vestibuled cars. In the absence of any rule of law requiring all cars to be vestibuled, the negligence in this respect must consist in having, by the advertisement, held out to prospective passengers the assurance that this was a 'solid vestibuled train,' whereas it was broken, without notice, by the introduction of the car for local traffic, thereby inducing the passenger to act upon the supposition that he was upon a solid train, and be less guarded in passing from car to car. Assuming, without deciding, that the deceased had a right to rely and did rely upon the statement in the folder, it must be remembered that this car was upon a train to be run in daylight. The want of a vestibule was plainly visible. This is not an action upon contract. There is no claim that the defendant agreed to carry the passenger upon a train of vestibuled cars. Was the railroad guilty of a want of care likely to produce injury in thus introducing a car where it must have been evident to those having occasion to use it that it was not provided with a vestibule? We think this question must be answered in the negative, and that there was no failure to observe that degree of care, precaution, and vigilance justly demanded by the circumstances, the absence of which constitutes negligence."

In the course of the opinion the court further said, referring to Bronson v. Oakes, supra:

"It is true that it has been held, and we think properly so, that, where a company has undertaken to provide a vestibuled train, it is negligence to permit the appliances to be out of order, or to leave the doors carelessly open, so that passengers who rely and have a right to rely upon the safety and proper management of the train are injured thereby."

In Crandall v. Railway Co., 96 Minn. 434, 105 N. W. 185, 2 L. R. A. (N. S.) 645, 113 Am. St. Rep. 653, 6 Ann. Cas. 973, a boy seven years of age, riding on the rear platform of a sleeping car, with vestibules, fell through an outside door of one of the vestibules, left open while the car was moving. It appeared that the boy was accompanied by his aunt,

and that she had permitted him to ride on the platform only after she had been assured by the train porter that it was safe, "as everything was securely fastened." In affirming a judgment for the plaintiff, the court said:

"The defendant was not bound to have the car vestibuled; but, having done so, it could not by acts and words lead its passengers to believe that the doors of the vestibule would be kept closed between stations, and then negligently leave them open, without incurring liability to passengers injured thereby."

In Clanton v. Railway Co., 165 Ala. 485, 51 South. 616, 27 L. R. A. (N. S.) 253, the other of the three cases relied upon by appellant, it appeared that the plaintiff fell from the car platform at a time when the train was at a station and the door to the vestibule, through which she fell, was open so that persons having occasion to do so might pass into and out of the car.

[2] We think the other grounds relied upon as supporting the contention made that the trial court erred when he refused to instruct the jury to find in appellant's favor also should be overruled. We do not understand that the doctrine of "assumed risk," as distinguished from contributory negligence, applies where a passenger is seeking a recovery of damages for personal injuries due to negligence of a carrier (Railway Co. v. Carter, 71 S. W. 73); and we do not think it appeared from the testimony as a matter of law that appellee was guilty of contributory negligence.

The court instructed the jury as follows:

"If you shall find that an ordinarily prudent and cautious person, under the same or similar circumstances, would not have gone upon the platform as plaintiff did, he cannot recover.

"If you believe that had plaintiff exercised that degree of care and caution for his own safety that would have been exercised by an ordinarily prudent person under similar circumstances he would not have fallen from the train, he cannot recover."

[3] If we thought, and we do not, that the instructions just set out were insufficient as guides to the jury in determining the issue as to negligence or not on the part of appellee, we would be of opinion, nevertheless, that the court did not err as complained of by appellant when he refused its special charge No. 20 to find for it if they believed, other conditions concurring, that appellee—

"knew or by the exercise of ordinary care and caution could have known that the trap and door of the vestibule was open at the time he went upon the platform or during the time he remained upon the platform; * * * and if they further believed that he was guilty of the slightest degree of a want of that ordinary care that an ordinarily prudent person would have exercised under similar circumstances to have avoided being injured by reason of the trap and door not being closed, and that he had not been so guilty of such slight degree of that want of ordinary care that an ordinarily prudent person would have exercised under similar circumstances he would not have been injured."

That appellee was chargeable with knowledge that the door was open, if by the exercise of care he could have known it, we think was not an accurate statement of the law. As the door was open, unquestionably he could have known it was, had he used care in inspecting the vestibule, to determine its condition, before he went to it, or while in it. Whether an ordinarily prudent person under the circumstances would have made such an inspection, or, without making it, would have known the door was open, was the question. Bookrum v. Railway Co., 57 S. W. 919. And we are inclined to think the court also was justified in refusing the requested charge on the ground that the use in it of the language "slightest degree of a want" of ordinary care was calculated to mislead the jury. While the use of the qualifying words would not have authorized the jury to include that conduct on appellee's part not amounting to a want of ordinary care would render him guilty of negligence, they were confusing and might have led to a misunderstanding of the instruction.

The refused special charge No. 19 was subject to the objection first suggested above to the refused special charge No. 20, and on that ground, it is believed, it was not error to refuse to give it.

The judgment is affirmed.